**TMF TOOL CO., INC.,
Plaintiff–Appellee,
Cross–Appellant,**

**and**

**Jack Joseph and Joseph & Myers,
Cross–Appellants,**

**v.**

**Hans MULLER, Defendant–Appellant,
Cross–Appellee.**

**Nos. 89–1855 and 89–1881.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 19, 1990.

Decided Aug. 16, 1990.

Stephen R. Swofford, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Jack Joseph, Joseph & Myers, Chicago, Ill., for plaintiff-appellee, cross-appellant.

Barry S. Alberts, Sam V. Menegas, Schiff, Hardin & Waite, Chicago, Ill., for defendant-appellant, cross-appellee.

Before CUDAHY, MANION, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

This case exclusively concerns the imposition of monetary sanctions under Rule 11 of the Federal Rules of Civil Procedure. The case began simply enough in 1987. TMF Tool Company filed a three-count complaint against a Swiss company, H.M. Financiere & Holding, S.A., and its chief executive officer, Hans Muller. The complaint alleged that an agent of the defendants fraudulently induced TMF to sign and deliver a $350,000 promissory note and a $175,000 post-dated check. Counts I and II of the complaint sought to enjoin negotiation of the note and check, and sought reformation of the instruments. Count III requested an accounting.

After the complaint was filed, defendant Hans Muller, a resident of Switzerland, came to the United States—more particularly Chicago—to discuss the dispute with the plaintiff. When the negotiations proved to be unsuccessful, an attorney for TMF immediately handed Muller a summons and complaint.

Muller moved to dismiss the complaint for lack of personal jurisdiction. In reviewing the motion to dismiss, the court found that TMF had enticed Muller into the jurisdiction in order to serve him with a summons and complaint. Applying the "fraudulent enticement" doctrine, the court held the service of process to be invalid and dismissed the complaint as to Muller on jurisdictional grounds.

H.M. Financiere & Holding moved to dismiss the complaint for the failure of TMF to plead the fraud counts with particularity, and for lack of stating a proper basis to warrant the relief of an accounting. The court agreed. Count III was dismissed with prejudice because an accounting was not an appropriate form of relief under the circumstances. Counts I and II were dismissed without prejudice for failure to plead with particularity, and TMF was granted leave to replead these counts within 20 days. TMF did not file an amended complaint within the 20-day period. Instead, TMF voluntarily dismissed the action under Rule 41(a) of the Federal Rules of Civil Procedure.

Thereafter, both Muller and H.M. Financiere & Holding moved for sanctions under Rule 11. The district court denied H.M. Financiere & Holding's request for Rule 11 sanctions. However, the district court agreed with regard to Muller's request for sanctions against TMF. The court found that TMF either did not research the applicable law regarding fraudulent enticement or chose to ignore the law on that issue when it served process on Muller. The court gave Muller ten days to submit "an affidavit reflecting attorneys fees, costs and expenses incurred in connection with the litigation of the portion of the motion to dismiss for lack of personal jurisdiction."

In response to the court's direction, Muller submitted a petition for attorneys' fees, costs, and expenses in the amount of $9,320. The supporting affidavit made it

clear that the amount requested included attorneys' time in connection with the portion of the motion to dismiss for lack of personal jurisdiction and for the fees incurred in connection with the briefing of the Rule 11 motion. One day after the petition for fees was submitted the district court granted Muller the amount requested thus setting sanctions against TMF in the sum of $9,320.

Within two weeks, TMF moved to vacate the district court's award of fees under Rule 11. The district court granted the motion to vacate its earlier sanctions award finding that Muller's fee petition had been excessive. The court held that the fee petition had not conformed with the court's order because it included, in addition to expenses relating to the portion of the motion to dismiss for lack of personal jurisdiction, expenses incurred in connection with the briefing of the Rule 11 motion. Also, the court determined that a billing rate of $190 per hour for the supervising attorney appeared excessive given the lack of complexity involved regarding the jurisdictional issue. However, the court granted Muller leave to submit an amended petition for fees and costs limited to the initial research and briefing of the personal jurisdiction issue. The court also directed Muller to submit justification or authority to support the rate of $190 per hour for the supervising attorney.

The amended petition for attorneys' fees was filed and Muller requested reduced fees in the amount of $6,652. The supporting materials indicated that the amended fee petition did not seek any reimbursement for briefing the Rule 11 motion, and also included comparable fee data and authorities supporting a fee award of $190 per hour for a supervising attorney. TMF opposed the amended petition arguing that the fee was still excessive. The district court agreed with TMF and held that the two fee petitions submitted by Muller warranted sanctioning. Moreover, the court found that Muller's conduct was "equally objectionable" as TMF's conduct regarding the fraudulent enticement issue. It therefore determined that the monetary sanc-

tions for each party would be equal and cancel each other.

Muller appeals the district court's decision denying him monetary sanctions (as requested in the amended petition for attorneys' fees). TMF and its attorneys, Jack Joseph and the law firm of Joseph and Myers, cross-appeal the district court's grant of sanctions in favor of Muller.

## DISCUSSION

### I. Procedural Issues and Jurisdiction

This is the classic situation of Rule 11 satellite litigation completely engulfing the original action. It is no wonder that the district judge ultimately declared the Rule 11 controversy a wash by effectively denying monetary sanctions to either side. This case also is fraught with a number of procedural failings. No judgment entry was made with regard to the sanctions and there was no specific determination by the court as to imposition of sanctions against counsel. Two things are certain: this litigation should end and no monetary sanctions should be awarded. We turn first to the task of sorting out the jurisdictional problems.

An order granting or denying monetary sanctions against a party or an attorney issued under the provisions of Rule 11 is an appealable decision which constitutes a judgment pursuant to Rule 54 of the Federal Rules of Civil Procedure. Because such an order has the effect of a judgment when a monetary sanction is imposed, it is necessary that the district court's decision clearly specify who is to pay the monetary sanction, who is to receive the monetary sanction and the amount of the monetary sanction. Moreover, under Rule 58 of the Federal Rules of Civil Procedure, a judgment is not effective until it is set forth on a separate document and entered on the district court's civil docket. In this case, the district court issued several orders dealing with sanctions. Its last order was entered on March 23, 1989, and the docket reflects "defendant Hans Muller's amended petition for attorneys' fees, costs and expenses is denied."

No separate document setting out any judgment was entered as required by Rule 58.

■ The general rule is that there must be a formal judgment entry before a final order is appealable. *United States v. Indrelunas*, 411 U.S. 216, 221, 93 S.Ct. 1562, 1564, 36 L.Ed.2d 202 (1973). Indeed, the basis for jurisdiction here is 28 U.S.C. § 1291, which permits appeals of "final decisions" of district courts. Therefore, we must determine whether we have jurisdiction over this appeal based on the final order issued by the district court. *Principal Mut. Life Ins. Co. v. Cincinnati TV 64 Ltd. Partnership*, 845 F.2d 674, 675–76 (7th Cir.1988).

■ Notwithstanding the clerk's failure to comply with Rule 58, the requirement of a separate judgment may be deemed waived when the final disposition of the district court clearly was intended to be the final decision in the case. *Rosser v. Chrysler Corp.*, 864 F.2d 1299, 1305 (7th Cir.1988) (citing *Bankers Trust Co. v. Mallis*, 435 U.S. 381, 384–87, 98 S.Ct. 1117, 1119–21, 55 L.Ed.2d 357 (1978)); *see also Adams v. Lever Bros. Co.*, 874 F.2d 393, 394 (7th Cir.1989) ("When nothing remains to be decided in the district court, the order is appealable even if formalities have not been observed"). Here, there is no question that the final order of March 23, 1989 was intended to conclude the matter of sanctions. The underlying claims in the complaint had long been dismissed and the final order was intended to end the ancillary aspect of the original litigation. We therefore conclude that the matter of sanctions is properly before us.

It was the intention of the district judge to reprimand both sides of this litigation under the auspices of Rule 11. However, beyond Muller and TMF, there was no specific designation as to anyone else being sanctioned. At best there can be but an inference drawn from the following language in the district court's final order:

TMF's and Muller's misconduct—or, more accurately, that of their respective attorneys—appear to be equally objectionable. Given the difficulty of ascertaining the precise amount of fees incurred for each wrong, equation of the two is appropriate.

The district judge merely concluded her order by denying Hans Muller any money for the sanctions imposed against TMF, or more precisely, denying his amended petition for attorneys' fees, costs and expenses.

The clear intent of the district court was to impose sanctions equally against both TMF and Muller, thus cancelling the respective amounts of monetary sanctions as provided under the authority of *Matter of Central Ice Cream Co.*, 836 F.2d 1068, 1074 (7th Cir.1987). However, it is not clear at all that the court actually intended to impose sanctions against counsel for the respective parties.

■ Rule 11 contemplates that the district court will specifically designate the entity upon which it is required to impose a sanction, be it "the person who signed [the pleading, motion or other paper], a represented party, or both." No designation was made in this case beyond the specific references to the represented parties, TMF and Muller. The mere mention of "their respective attorneys" is insufficient to constitute an imposition of sanctions against the persons who signed the pleadings or papers. Unless an attorney who signed the offending court documents is specifically identified for the imposition of sanctions, there can be no resulting judgment against him or her. Jack Joseph was not specifically identified as having sanctions imposed against him under Rule 11. As a consequence, there exists no jurisdictional basis for the cross-appeal of Jack Joseph in this case. Moreover, as the Supreme Court held in *Pavelic & Leflore v. Marvel Entertainment Group*, 493 U.S. ——, ——, 110 S.Ct. 456, 459, 107 L.Ed.2d 438 (1989), sanctions can be imposed only on attorneys who sign the pleadings or other papers which result in the imposition of sanctions—not on an attorney's law firm. Without question, no sanctions can be imposed against the law firm cross-appealing here, Joseph & Myers. Accordingly, the appeals of both

Jack Joseph and Joseph & Myers will be dismissed.

## II. Propriety of the Sanctions

### 1. Standard of Review

■ A district court's determinations pursuant to Rule 11 are reviewed under an abuse of discretion standard. *Cooter & Gell v. Hartmarx Corp.*, —— U.S. ——, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990); *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928 (7th Cir.1989) (*en banc*). This is the appropriate standard "whether sanctions were imposed or not, whether the question be frivolousness on the objective side of Rule 11 or bad faith on the subjective side." *Id.* at 930. In *Mars Steel*, we examined the operation of Rule 11: "Its focus is ex ante (what should have been done before filing) rather than ex post (how things turned out)." *Id.* at 932. Although a district court's determination is given deference, it is still subject to appellate review.

### 2. Sanctions against TMF

■ The cross-appeal by TMF concerns that aspect of the final order which reconfirmed sanctions against them for improper service of process. By its terms, Rule 11 sanctions relate only to matters arising out of the signing of a "pleading, motion or other paper." *See Samuels v. Wilder*, 906 F.2d 272, 274 (7th Cir.1990). Here, the summons return on Muller was signed and verified by one of TMF's attorneys, Jack Joseph. Thus, in this somewhat unusual instance, Rule 11 served as the basis for sanctions for improper service of process.

To put the issue of the propriety of the service of process in focus, we look to the arguments made to the district court regarding Muller's motion to dismiss. Muller claimed that the service of process on him should be quashed and the complaint against him dismissed because TMF failed to warn him that he might be served with a summons and complaint if the settlement talks failed. In support of this position, Muller cited and discussed *E/M Lubricants, Inc. v. Microfral S.A.R.L.*, 91 F.R.D. 235 (N.D.Ill.1981). Muller also discussed *K–Mart Corp. v. Gen–Star Indus. Co., Ltd.*, 110 F.R.D. 310 (E.D.Mich.1986), which followed *E/M Lubricants.*

In opposition, TMF argued that the cases cited by Muller were in a different factual context and that the fraudulent enticement doctrine is inapplicable when, as here, the defendant initiates the meeting in the plaintiff's jurisdiction. TMF argued that the preeminent authority on the fraudulent enticement doctrine, *Oden Optical Co. v. Optique du Mond, Ltd.*, 268 Ark. 1105, 598 S.W.2d 456 (1980), is cited in numerous texts for the proposition. that the doctrine does not apply when the defendant initiates the meeting in the plaintiff's jurisdiction. The rationale in the decisions that do apply the doctrine, TMF argued, was inapplicable to this case because Muller was not serious about settlement discussions. Finally, TMF cited *Commercial Mut. Accident Co. v. Davis*, 213 U.S. 245, 29 S.Ct. 445, 53 L.Ed. 782 (1909), as indicating that it is proper to effectuate service even where there are settlement discussions if the plaintiff's desire for a settlement was bona fide but the discussions were fruitless. In his reply memorandum Muller argued that all of TMF's arguments had been addressed and rejected in *E/M Lubricants.*

With the legal arguments TMF advanced in opposition to Muller's motion to dismiss in mind, we turn to the district court's evaluation of the propriety of TMF's service of process. In ruling on Muller's request for Rule 11 sanctions, the district court examined whether TMF made a reasonable inquiry into the facts and law and stated:

TMF violated the language and the purpose of Rule 11 with the prosecution of its claim against Muller. Had TMF inquired into *the law of this circuit*, it would have known that its attempted service upon Muller, a non-resident, was improper. Specifically, TMF fraudulently enticed Muller into this jurisdiction to serve him with process at the conclusion of unsuccessful settlement discussions.... The law clearly precludes service of process upon a non-resident defendant who enters the jurisdiction to

discuss settlement unless plaintiff first communicates to defendant that pre-lawsuit negotiations are no longer feasible, or that plaintiff has chosen to pursue legal remedies. *E/M Lubricants, Inc. v. Microfral, S.A.R.L.,* 91 F.R.D. 235, 238 (N.D.Ill.1981) (emphasis added).

Our inquiry is whether the district court abused its discretion by holding that TMF violated Rule 11 by failing to inquire into or ignoring "the law of this circuit" regarding fraudulent enticement before serving Muller.

The sanction imposed here involves the objective aspect of Rule 11. Whether a reasonable litigant should have served Muller in Chicago after the unsuccessful negotiations must be viewed in light of the law and facts as they existed immediately prior to the conduct in question. The case law in this circuit then (as it is now) consisted of a single district court decision, *E/M Lubricants*. That case, which came from the Northern District of Illinois, held that the fraudulent enticement doctrine should be extended to the situation in which a plaintiff does not actually invite the defendant into the jurisdiction under false pretenses. In so holding, the district judge in *E/M Lubricants* acknowledged that he was extending the traditional fraudulent enticement doctrine.

In his memorandum in support of his motion for sanctions, Muller described *E/M Lubricants* as "controlling precedent" on the issue of fraudulent enticement. The district judge below mistakenly accepted this view and treated *E/M Lubricants* as "the law of this circuit". To the contrary, no controlling "law of this circuit" exists on the issue of fraudulent enticement because this court has yet to rule on the matter.

For a variety of quite valid reasons, including consistency of result, it is an entirely proper practice for district judges to give deference to persuasive opinions by their colleagues on the same court. But, while this is a laudable and worthwhile practice, it does not convert district court decisions into binding precedent. In discussing the doctrine of *stare decisis*, this court has said:

> [D]istrict judges in this circuit must not treat decisions *by other district judges,* in this and *a fortiori* in other circuits, as controlling, unless of course the doctrine of res judicata or of collateral estoppel applies. Such decisions will normally be entitled to no more weight than their intrinsic persuasiveness merits. The reasons we gave for giving some though not controlling weight to decisions of other federal courts of appeals do not apply to decisions of other district courts, because the responsibility for maintaining the law's uniformity is a responsibility of appellate rather than trial judges and because the Supreme Court does not assume the burden of resolving conflicts between district judges whether in the same or different circuits.

*Colby v. J.C. Penney Co., Inc.,* 811 F.2d 1119, 1124 (7th Cir.1987) (emphasis in original). *See also United States v. Articles of Drug Consisting of 203 Paper Bags,* 818 F.2d 569, 572 (7th Cir.1987) ("[A single district court decision] is not binding on the circuit, or even on other district judges in the same district").

It was not inappropriate for the district judge to follow the reasoning in *E/M Lubricants* and dismiss TMF's case for lack of personal jurisdiction.[1] But the existence of the district court decision in *E/M Lubricants* did not make it objectively unreasonable as a matter of law for plaintiff's counsel to serve Muller in the manner he did. Such action was not contrary to existing law in this circuit. TMF was free to conclude, as it argued in its memoranda filed with the court, that other cases were more persuasive and that *E/M Lubricants* should not be followed. The service of process undertaken and filed by TMF could not constitute a basis for the imposition of sanctions under Rule 11. Accordingly, the district court's decision to the contrary was an abuse of discretion.

---

1. Because the underlying case was dismissed voluntarily by TMF, the application of the doctrine of fraudulent enticement is not before us and remains unresolved.

### 3. Sanctions against Muller

 We now reach Muller's appeal of the portion of the final order which held that his conduct in submitting his fee petitions was sanctionable.[2] Although the actions for which Muller was sanctioned were triggered by the erroneous award of sanctions against TMF, Muller's conduct in submitting the fee petitions was independently within the scope of the provisions of Rule 11. *See Matter of Central Ice Cream Co.,* 836 F.2d at 1947.

 Muller's initial fee petition was filed at the direction of the court following its determination that sanctions against TMF were required. The petition enumerated the number of hours billed for work both on the personal jurisdiction aspect of the motion to dismiss *and* on the Rule 11 motion relating to that issue. It included the amount of time worked by each attorney and his or her billing rate. One day after it was filed, the district court granted Muller's request thereby setting the sanctions against TMF at $9,320. However, TMF filed a motion to vacate the fee petition award. After a hearing, the district court vacated the previous order which granted Muller's fee petition. The court explained:

> Muller's fee petition is excessive [because] it does not conform with this court's [previous] order ... expressly limiting recovery to Muller's fees and costs relating to "the portion of the motion to dismiss for lack of personal jurisdiction." A billing rate of $190 or $195 an hour for the supervising attorney who reviewed and approved the pleadings prepared by another attorney appears excessive, given the lack of complexity involved and expertise required....
>
> Muller is granted leave to submit by January 17, 1989 an amended petition for fees and costs limited to research and briefing of the jurisdictional issues and to submit any justification or authority to support a fee award of $190 or $195 an hour for the supervising attorney....

Complying with the court's direction, Muller submitted an amended petition which responded to both matters raised by the district judge and requested fees in the amount of $6,652. First, the amended petition eliminated the fees incurred in connection with the Rule 11 motion. The accompanying memorandum, in order to explain the inclusion of such fees in the original petition, noted that some decisions have awarded expenses for litigating a Rule 11 motion. Second, comparable fee data and authorities supporting a fee award of $190 or $195 an hour for a supervising attorney were submitted. Specifically, case authorities supporting the appropriateness of a "standard" rate for non-complex matters were discussed. Muller's attorneys billed all of the hours worked on the issue at the standard rate. In addition, the ranges of hourly rates charged by comparable law firms in Chicago were submitted. The rate charged by the supervising attorney was within these ranges. TMF opposed the amended petition, again arguing it was excessive. In its final order, the district court agreed with TMF and found the conduct of Muller regarding the submission of both fee petitions to be sanctionable. The court explained as follows:

> In response to the court's restricted and clearly delineated sanctions award, Muller submitted a disproportionate fee petition that has generated two entire briefing cycles over the course of six months. Muller admits his original fee petition sought reimbursement in connection with the litigation of his motion for sanctions....
>
> TMF's fraudulent enticement of Muller, or its inability to rebut such a claim, is no more objectionable than Muller's submission of two excessive fee requests.[2] In fact, determination of the appropriate sanction has depleted more of this court's limited resources than did

**2.** Actually, Muller's notice of appeal mentions only the denial of his amended petition for attorneys' fees, costs and expenses and not the

imposition of sanctions. However, it is obvious that Muller intended to appeal the entire order and all its implications.

the resolution of the motion to dismiss....

2 Although the court makes no finding as to the specific amounts billed by Muller's attorneys for the work indicated, 52.38 hours appears excessive given the noncomplexity of the personal jurisdiction issue and the apparent dearth of authority on the matter.

. . . . .

TMF's and Muller's misconduct—or, more accurately, that of their respective attorneys—appear to be equally objectionable. Given the difficulty of ascertaining the precise amount of fees incurred for each wrong, equation of the two is appropriate.

Muller argues that his amended petition simply responded to the district court's concerns expressed in the earlier order that vacated the initial fee petition award. In our view that appears to be the case.

The district court stated that the initial fee petition by Muller should not have included a request for fees incurred for working on the Rule 11 motion. However, its inclusion in the initial petition was not originally viewed as a sanctionable matter, but rather the petition was vacated and the court granted Muller leave to file an amended petition omitting any reference to fees for Rule 11 work.

Muller's amended fee petition did exactly what the district court required. That is, drop the request for fees for work on the Rule 11 motion and submit the hours for researching and briefing the jurisdictional issue and justification for the billing rate of the supervising attorney.

In the final order in which Muller was sanctioned for matters contained in both fee petitions, the district court described the fee petition *initially* submitted as "disproportionate" and "excessive". It also indicated in a footnote in the final order that "52.38 hours appears excessive given the noncomplexity of the personal jurisdiction issue and the apparent dearth of authority on this matter." However, in the earlier order vacating the original award of fees, the court expressed no concern over the number of hours billed on the jurisdictional

issue and the same number of hours was submitted in the amended petition.

The rationale advanced by the district court for the imposition of sanctions against Muller was based on the "two excessive fee requests." The court stated that the determination of an appropriate sanction "depleted more of this court's limited resources than did the resolution of the motion to dismiss." The district court went on to indicate that it believed that sanctions should be used to discourage both frivolous filings and improper requests for fees. For these propositions the district court relied on *Frantz v. United States Powerlifting Fed'n*, 836 F.2d 1063 (7th Cir.1987), and *Matter of Central Ice Cream Co.*

We certainly agree with these general principles set out in *Frantz* and *Matter of Central Ice Cream Co.* However, the court had already determined that monetary sanctions should be imposed against TMF in favor of Muller. The issue was not whether fees should be awarded to Muller but what was to be the amount of the fees. The district judge could have disregarded the figures submitted and set the monetary sanctions in an amount she thought represented reasonable attorneys' fees, costs and expenses. But because the district court applied an equitable solution for what it perceived to be misconduct by both parties, it declined to make a finding as to how many hours would have been appropriate for work on the jurisdictional issue and chose not to determine the amount of a reasonable fee.

In this situation, we are left to determine whether the district court's effort to achieve an equitable solution by merely describing Muller's fee petition as excessive constituted an abuse of discretion. The district court stated that the billable hours "appeared" excessive but made no definitive finding to that effect. Likewise, we can only say that the billable hours and resulting fee of $6,652 submitted by Muller may be excessive—but then again they may not. The amount requested would, in fact, appear to fall within a range of rea-

sonable fees under the circumstances.[3]

Although the fees requested by Muller were greater than what the district judge would have awarded, it does not automatically follow that the submission warranted an imposition of sanctions. This is not to say that there would not be circumstances in which a request for fees following the imposition of sanctions would be so bloated in amount as to warrant sanctions. *See Frantz,* 836 F.2d at 1066. But there must be some conclusive finding that the fees requested *are* in fact excessive to a point which warrants the imposition of sanctions. The reduced request for $6,652 in the amended petition did not reach that "bloated" level.

The real cause for irritation in this case was the inordinate time required by the district court for resolving the compounded Rule 11 disputes—particularly when compared to the early and simple resolution of the underlying litigation. In this atmosphere the district judge sought to cast a pox on the houses of both parties. We are entirely sympathetic to her position, and we give deference to district courts' decisions to award sanctions, but "the articulated considerations on which the district court based its award of sanctions [must] support the award." *In re Ronco, Inc.,* 838 F.2d 212, 218 (7th Cir.1988); *see also Tabrizi v. Village of Glen Ellyn,* 883 F.2d 587, 591 (7th Cir.1989). Here, the sanctions imposed against Muller are not supported by the considerations articulated in the district court's final order. Thus, the district court abused its discretion in sanctioning Muller.

## CONCLUSION

At first blush it may seem ironic that the outcome of this case, insofar as an award of monetary sanctions is concerned, would be the same whether we accept or reject the decision of the district court. Under either scenario no monetary sanctions are provided. The irony fades, however, when we observe that the district judge was at-tempting to achieve a just result in a situation where she felt that both sides were to blame for the quarrelsome beginning and end to ancillary proceedings. The conduct of counsel may not have been in the best traditions of advocacy; however, the documents upon which they placed their signatures did not provide a basis for the imposition of sanctions against their respective clients. For the reasons stated above, the appeals of Jack Joseph and Joseph & Myers are DISMISSED, and the imposition of sanctions by the district court against TMF and Muller are VACATED.

---

**3.** The law firm's hourly rate appeared to be comparable to other Chicago law firms. The supervising attorney billed 22.38 hours at a rate of $190 per hour and 30 hours were billed by an associate at a rate of $80 per hour. This firm had successfully defended an overseas client in a substantial case in federal court.