**ICE BOWL L.L.C., Plaintiff,**

v.

**WEIGEL BROADCASTING CO., Defendant.**

**No. Civ.A. 98–C–348.**

United States District Court, E.D. Wisconsin.

July 28, 1998.

Grant C. Killoran, Michael Best & Friedrich, Milwaukee, WI, for Plaintiff.

Scott W. Hansen, Reinhart Boerner Vandeuren Norris & Rieselbach, Milwaukee, WI, for Defendant.

## ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND GRANTING DEFENDANT'S MOTION TO DISMISS COUNTS III–VI

REYNOLDS, District Judge.

This action, initially filed in Waukesha County Circuit Court for the State of Wisconsin, involves a commercial dispute between the plaintiff, Ice Bowl L.L.C. ("Ice Bowl"), a Wisconsin company in the business of sports marketing, and Weigel Broadcasting Co. ("Weigel"), an Illinois corporation which owns WDJT–TV, a CBS affiliate in Milwaukee, Wisconsin. Presently before the court is Ice Bowl's motion to remand this action to Waukesha County Circuit Court for the State of Wisconsin and Weigel's motion to dismiss all of the tort claims, counts III through VI, in the complaint. Ice Bowl's motion to remand shall be denied because the relief requested would not satisfy the contractual forum selection clause on which the motion is based. Weigel's motion to dismiss the tort claims, counts III–VI, shall be granted because those claims are barred by Wisconsin's economic loss doctrine.

### I. FACTS

This suit arises from an alleged agreement between the parties, whereby Ice Bowl would make available a local sports celebrity for Weigel's use in creating six television programs and related materials. In return, Weigel allegedly promised payment of certain sums to both Ice Bowl and the celebrity. Further, Weigel allegedly committed itself to providing Ice Bowl broadcasting air-time on Milwaukee's WDJT–TV, other Wisconsin stations on which the same programming is carried, and on Weigel's Chicago-area television station.

Allegedly, despite Ice Bowl's performance, Weigel has failed to meet its obligations to provide Ice Bowl with the promised air-time or its cash equivalent. The complaint further alleges that Weigel engaged in a "course and pattern of wrongful activity ... including but not limited to" concealing Weigel's failure to perform. (Compl.¶ 7.) The complaint frames these facts in seven counts: I—Breach of Contract; II—Quantum Meruit; III—Intentional Misrepresentation; IV—Strict Responsibility Misrepresentation; V—Negligent Misrepresentation; VI—Fraud in the Inducement; and VII—For an Accounting and Constructive Trust.

Ice Bowl filed this complaint in Wisconsin's Waukesha County Circuit Court on March 24, 1998. Weigel removed the action to this court on April 14, 1998. On that same day, Weigel filed a motion to dismiss the tort claims, counts III–VI, as barred by the economic loss doctrine. Ice Bowl both responded to this motion and filed a motion to remand the case to Waukesha County Circuit Court. The basis of this latter motion is a forum selection provision in the parties' contract.

### II. DISCUSSION

#### A. *Forum Selection and Ice Bowl's Motion to Remand*

Section VIII–A of the parties' contract provides: "Jurisdiction and venue for litigation of any disputes shall be in Milwaukee County Circuit Court." Nonetheless, Ice Bowl filed this suit in, and seeks to remand it to, Waukesha County Circuit Court. In support of this motion, Ice Bowl argues that the provision is merely a bar to federal court; that is, that "Milwaukee County Circuit Court" means any Wisconsin state court. For its part, Weigel argues that the provision is permissive rather than mandatory; that is, that "shall" means "may."

Rather than follow the parties through the looking glass, the court finds the provision clear on its face and that Ice Bowl waived its benefit by filing in the wrong court. Allowing remand would continue a game of jurisdictional hopscotch that serves no one. However, the court will deny the

motion to remand for a simpler reason: granting the motion would do nothing in the way of enforcing the forum selection clause. Waukesha County Circuit Court is no more within the clause than is this court.

### B. *Motion to Dismiss*

### 1. *Standards for a Motion to Dismiss*

This court will grant a motion to dismiss for failure to state a claim if it is clear that the plaintiff would not be entitled to relief even if the complaint's factual allegations were proven. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Accordingly, the court must accept as true the plaintiff's factual allegations and must draw all reasonable inferences from the pleadings in favor of the plaintiff. *Gillman v. Burlington Northern Railroad, Co.,* 878 F.2d 1020, 1022 (7th Cir.1989). The court is not required, however, to ignore any facts alleged in the complaint that undermine the plaintiff's claim or to assign weight to unsupported conclusions of law. *Gray v. County of Dane,* 854 F.2d 179, 182 (7th Cir.1988).

### 2. *The Economic Loss Doctrine and Ice Bowl's Tort Claims*

The tort theories advanced in this case by Ice Bowl—intentional, strict liability, and negligent misrepresentation, and fraud in the inducement—add no facts to the contract claims but merely invoke new adjectives. There is but a single dispute in this case, and it is one sounding in contract. Weigel's motion to dismiss counts III–VI will be granted.

■ In this diversity case, we turn to Wisconsin law, both under *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and under the contract between the parties in this case. Wisconsin enforces the economic loss doctrine by which commercial parties to a contract must resolve disputes arising from such contract according to principles of contract and warranty law and the text of their agreement. *Daanen & Janssen, Inc. v. Cedarapids, Inc.,* 216 Wis.2d 394, 573 N.W.2d 842 (1998). Having bargained a contract, the parties cannot reallocate contractually bargained for risk by pleading in tort, economic losses. *Id.* at 399–400, 573 N.W.2d at 845–46.

Ice Bowl concedes that the economic loss doctrine applies to contracts for services as well as for goods. *See generally Stoughton Trailers, Inc. v. Henkel Corp.,* 965 F.Supp. 1227 (W.D.Wis.1997). Likewise, Ice Bowl does not argue that it is not a commercial entity or that, as a result of the Weigel's alleged nonfeasance, Ice Bowl has sustained damages unrelated to the contract. Thus, the basic elements of the economic loss doctrine are present.

However, Ice Bowl claims that an exception to the economic loss doctrine exists for tortious misrepresentation claims. While Wisconsin courts have not spoken directly to this point, the Seventh Circuit has already predicted that Wisconsin would not except negligence and strict liability misrepresentation claims from the economic loss doctrine. *Cooper Power Sys., Inc. v. Union Carbide Chemicals and Plastics Co.,* 123 F.3d 675, 682 (7th Cir.1997) (*citing Badger Pharmacal, Inc. v. Colgate–Palmolive Co.,* 1 F.3d 621, 628 (7th Cir.1993)). Recently, this prediction was extended to encompass claims of intentional misrepresentation. *Id.* 123 F.3d at 682. The Seventh Circuit's holding rested on one of the foundations of the economic loss doctrine: the risk of misrepresentation can, and often is, allocated among commercial entities, through the law of warranty.

Ice Bowl takes the risky tack of arguing that *Cooper Power* was wrongly decided by the Seventh Circuit. Specifically, Ice Bowl points to the three policy foundations of the economic loss doctrine as recently rearticulated by the Wisconsin Supreme Court in *Daanen & Janssen:* maintaining the distinction between tort and contract law, protecting commercial parties' freedom to allocate risk by contract, and encouraging the purchaser—the party best suited to assess the risk—to assume, allocate, and/or insure against that risk. 216 Wis.2d at 402, 573 N.W.2d at 846.

Ice Bowl zeros in on the second policy which upholds the freedom of commercial parties to allocate risk by contract. Specifically, Ice Bowl claims that this function is torn asunder when a party engages in misrepresentation. *Daanen & Janssen's* explication of the risk-allocation policy, however, is hardly a new concept in economic loss doctrine. *See, e.g., D'Huyvetter v. A.O.*

*Smith Harvestore Prods.*, 164 Wis.2d 306, 329–30, 475 N.W.2d 587, 595–96 (Ct.App. 1991) (*citing Sunnyslope Grading, Inc. v. Miller, Bradford & Risberg, Inc.*, 148 Wis.2d 910, 920–21, 437 N.W.2d 213, 217 (1989)). Taken together with the fact that *Daanen & Janssen* dealt, not with a misrepresentation exception to the economic loss doctrine, but with the relationship between that doctrine and the concept of privity, *Daanen & Janssen* can hardly be seen as pulling the rug from under *Cooper Power's* feet.

 Nonetheless, not every conceivable tort is precluded by the economic loss doctrine. *See Raytheon Co. v. McGraw–Edison Co.*, 979 F.Supp. 858, 872–73 (E.D.Wis.1997) (*analyzing Cooper Power*). This stems from the simple proposition that, in breaching a contract, a party may also breach a duty that exists independently of contractual obligations. *Landwehr v. Citizens Trust Co.*, 110 Wis.2d 716, 329 N.W.2d 411 (1983); *see also Daanen & Janssen*, 216 Wis.2d at 403, 573 N.W.2d at 846 (discussing distinction between contractual duties and common law duties). Many courts applying the economic loss doctrine hold that a claim of "fraud in the inducement" may present an instance in which a defendant violates a common-law duty. This exception to the economic loss doctrine is not without limitation. Not all claims of fraud in the inducement of a contract plead breach of a duty extrinsic to the contract. *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 209 Mich.App. 365, 532 N.W.2d 541 (1995). The "fraud in the inducement" claim in this case illustrates why a deeper analysis is needed. Count VI of the complaint merely reiterates the facts underlying the "breach of contract" claim. Specifically, it identifies no extra-contractual obligation or duty. Rather, count VI alleges that Weigel fraudulently induced Ice Bowl to enter the contract by *representing that Weigel would perform obligations established by the contract*. Not only does this allegation illustrate a breach of contractual, not com-

mon-law duty, it demonstrates that if such an allegation were to proceed in tort, it "would swallow the economic loss doctrine." *Cooper Power*, 123 F.3d at 681–82.

This observation flows from the fact that the distinction that the economic loss doctrine maintains between tort and contract serves the divergent purposes of each body of law. While "[c]ontract law rests on obligations imposed by bargain ... [t]ort law is rooted in the concept of protecting society as a whole...." *Daanen & Janssen*, 216 Wis.2d at 403–04, 573 N.W.2d at 846. Thus, commercial parties are bound by the duties arising from the contract; and these, the parties are free to bargain for and negotiate around. Even the covenant of good faith, which the law implies into all contracts, does not create a free-floating duty, but rather is treated as an actual provision of the contract. *See generally Market Street Assoc. v. Frey*, 941 F.2d 588 (7th Cir.1991) (analyzing Wisconsin law and discussing "breach of implied covenant of good faith" as contract action).

Tort law provides a contrast insofar as it is premised on a duty of care independent of private agreements. Examples help define the parameters of tort law. In Wisconsin, a seller of real estate owes certain duties of disclosure to a non-commercial purchaser, the breach of which is actionable in tort. *Ollerman v. O'Rourke*, 94 Wis.2d 17, 42, 288 N.W.2d 95, 107 (1980). Thus, members of the general public are not left to the mercy of a sophisticated, commercial seller. This can also be seen in transactions between insurers and insureds. So vital are certain types of insurance to the public interest,[1] that the Wisconsin Supreme Court holds that there exists a duty of good faith on the part of the insurer to administer the insurance contract in good faith.[2] *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368 (1978). The "tort of bad faith is not a tortious breach of contract. It is a separate

---

1. "Insurance holds an important place in our industrial society. Insurance is recognized by the insured, the victim, the legislature and the public as a system for compensating the third-party victim for injuries caused by another." *Kranzush v. Badger State Mut. Cas. Co.*, 103 Wis.2d 56, 94, 307 N.W.2d 256, 275 (1981) (Abrahamson, J. concurring).

2. Noteworthy is that the tort of "bad-faith," in the context of insurance, is distinct from a claim in contract for breach of the covenant of good faith and fair dealing that attends all contracts. *See Market Street*, 941 F.2d at 596; § 401.203, Wis. Stat.

intentional wrong, which results from a breach of duty imposed as a consequence of the relationship established by contract." *Id.* 85 Wis.2d at 687, 271 N.W.2d at 374. But these circumstances in which a general measure of protection—protection that cannot be bargained away or reallocated—supplants some of the parties' freedom of contract, are rare and limited.

The economic loss doctrine holds that tort law does not provide this same generalized protection in the context of transactions between two commercial parties. *See Badger Pharmacal v. Colgate–Palmolive Co.,* 1 F.3d 621, 627 (7th Cir.1993) (discussing *Ollerman* in context of transaction between sophisticated commercial parties). Before departing this point, it is vital to note that the fact that commercial parties do not reap the benefits of generalized duties, the breach of which is actionable in tort, is seen not as indifference to the fate of commercial parties, but as a grant of freedom of contract. The economic loss doctrine permits commercial parties to allocate risk more freely than in transactions where one of the parties is not a commercial actor. In turn, confinement to actions sounding in contract generally leaves contracting parties exposed to far more predictable liabilities than do tort actions; contract remedies reflect more the contract at issue rather than a jury's view of every scrap of evidence of harm a plaintiff can muster.

This is the path Wisconsin has taken. Because commercial contracts do not usually directly implicate "the concept of protecting society as a whole," *Daanen & Janssen,* 216 Wis.2d at 404, 573 N.W.2d at 846, parties to such a contract themselves determine the scope of their duties to one another with regard to the subject matter of the contract. A breach of these duties is actionable in contract law. Therefore, unless Ice Bowl can identify a duty owed to it by Weigel, that is not created by the contract, the economic loss doctrine confines Ice Bowl's remedies to the law of contract.

Because of the linguistic flexibility possible under the label "fraudulent inducement," the court must "look not at the label placed on the claim by the attorney, but rather on the substance of the claim." *Raytheon,* 979 F.Supp. at 872 (*quoting Hotels of Key Largo, Inc. v. RHI Hotels, Inc.,* 694 So.2d 74, 77 (1997)). Like the other misrepresentation claims in the complaint, the fraudulent inducement count merely restyles a "breach of contract" claim and fails to identify an independent breach of duty that could remain actionable despite the bar of the economic loss doctrine.

■ Adding an allegation of a culpable mental state to a "breach of commercial contract" claim does not avoid the doctrine. When parties allocate risk contractually through warranty and other provisions, these provisions do not generally turn on a party's mental state. That is, when a buyer extracts a warranty from a seller who represents that a thing is a thing, if, in the end, the thing is not a thing, the warranty protects the buyer without regard to the seller's mental state. Therefore, the party complaining of breach does not need tort law to protect itself. It is, thus, folly to claim that the breach of contract, accompanied by some putatively culpable mental state, becomes a tort. Nonperformance by any other name is still nonperformance.

In sum, our law places great importance on the ability of commercial parties to freely ply their trade. This principle may be qualified when commerce implicates public interest. In the vast majority of instances, when called upon to adjudicate a dispute between two commercial entities, a court must merely enforce, insofar as possible, the bargain between the parties. To ignore the contract, or write into it unexpected provisions based on the law of tort, would undo the predictability and freedom to bargain that lies at the heart of contract. *See Cooper Power,* 123 F.3d at 682. Counts III–VI shall be dismissed.

### III. CONCLUSION

The plaintiff Ice Bowl L.L.C.'s motion to remand this case to Waukesha County Circuit Court for the State of Wisconsin is **DENIED.**

The defendant Weigel Broadcasting Co.'s motion to dismiss counts III–VI of the complaint is **GRANTED.**