**BUDGETEL INNS, INC., Plaintiff,**

v.

**MICROS SYSTEMS, INC., and Fidelio Software Corporation, Defendants.**

No. 97–C–301.

United States District Court, E.D. Wisconsin.

Jan. 27, 1999.

---

Charles H. Borr, Theodore J. Cohen, for plaintiff.

Wm. H. Levit, Jr., Paul E. Guttormsson, Milwaukee, WI, for defendants.

## DECISION AND ORDER

ADELMAN, District Judge.

On June 22, 1998, I denied a motion to dismiss plaintiff Budgetel Inns, Inc.'s claim of fraud in the inducement, finding that such claims as a rule are not barred by Wisconsin's economic loss doctrine. *See Budgetel Inns, Inc. v. Micros Systems, Inc.,* 8 F.Supp.2d 1137 (E.D.Wis.1998) (*Budgetel I* ). As I recognized in that decision, my holding directly conflicted with a decision issued by Judge Rudolph T. Randa in *Raytheon Co. v. McGraw–Edison Co.,* 979 F.Supp. 858 (E.D.Wis.1997). Judge Randa had held that fraud in the inducement claims survive the economic loss doctrine bar only in very limited circumstances.

Shortly after I issued my decision, Judge John W. Reynolds issued *Ice Bowl, L.L.C. v. Weigel Broadcasting Co.,* 14 F.Supp.2d 1080 (E.D.Wis.1998). Judge Reynolds reached the same result Judge Randa had in *Raytheon.*

Defendants Micros Systems, Inc. and Fidelio Software Corporation subsequently filed a motion for reconsideration of my June 22 decision, asking that I adopt the reasoning of *Ice Bowl* because it "is a better-reasoned opinion" and because I am causing inconsistency within the district. Since the filing of

the motion Chief Judge J.P. Stadtmueller issued *Home Valu, Inc. v. Pep Boys—Manny, Moe & Jack of Del., Inc.,* No. 98–C–531 (E.D.Wis. Dec. 23, 1998), finding *Ice Bowl* to be very instructive and following its holding. Defendants forwarded a copy of Chief Judge Stadtmueller's decision to me as further support for their motion.

## I. RECONSIDERATION STANDARD

■■■ A motion for reconsideration serves a very limited purpose in federal civil litigation; it should be used only "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.,* 827 F.2d 246, 251 (7th Cir.1987) (quoting *Keene Corp. v. International Fidelity Ins. Co.,* 561 F.Supp. 656, 665–66 (N.D.Ill.1982), *aff'd* 736 F.2d 388 (7th Cir.1984)). While it is true that any nonfinal decision or order is subject to revision at any time before the entry of judgment, Fed. R.Civ.P. 54(b), such revisions are discouraged. "A court has the power to revisit prior decisions of its own ... in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988) (quoting *Arizona v. California,* 460 U.S. 605, 618 n. 8, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983)). In general, "litigants must fight an uphill battle in order to prevail on a motion for reconsideration." *United Air Lines, Inc. v. ALG, Inc.,* 916 F.Supp. 793, 795 (N.D.Ill.1996).

## II. LEGAL BACKGROUND

As stated in *Budgetel I,* I apply Wisconsin substantive law to Budgetel's state-law fraud claim. Where Wisconsin law is unclear because the state appellate courts have not spoken on an issue, I must predict how the state supreme court would rule. *Rodman Indus., Inc. v. G & S Mill, Inc.,* 145 F.3d 940, 942 (7th Cir.1998).

■■■ The "economic loss doctrine" is a judicially created doctrine in Wisconsin, which provides that a commercial purchaser of a product cannot recover from a manufacturer under tort theories damages that are solely economic losses. *Daanen & Janssen, Inc. v. Cedarapids, Inc.,* 216 Wis.2d 395, 400, 573 N.W.2d 842 (1998). When contractual expectations are frustrated because of a defect in the subject matter of a contract and the only damages are economic losses, a party's remedy lies exclusively in contract. *Raytheon,* 979 F.Supp. at 866. "Economic loss" is defined generally as "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *Northridge Co. v. W.R. Grace & Co.,* 162 Wis.2d 918, 925–26, 471 N.W.2d 179 (1991) (internal quotation marks omitted). "Economic loss" includes direct loss such as repair costs or diminution in value as well as consequential damages such as lost profits resulting from the inability to use the product. *Id.* at 926, 471 N.W.2d 179.

The question in *Raytheon, Ice Bowl, Home Valu,* and *Budgetel I* was whether the intentional tort of fraudulent inducement survives the economic loss doctrine. Wisconsin courts have not addressed the issue in any published decision.

In *Raytheon,* Judge Randa predicted that Wisconsin courts would adopt the reasoning of *Huron Tool & Engineering Co. v. Precision Consulting Services, Inc.,* 209 Mich.App. 365, 532 N.W.2d 541 (1995), which is the leading case in this area. Although recognizing an exception to the economic loss doctrine for claims of fraud in the inducement, the *Huron* court held that if a fraud in the inducement claim involves or is "interwoven" with the actual subject matter of a contract or "concerns the quality or character of the goods sold" the tort claim nevertheless is barred by the economic loss doctrine. *See id.* at 373, 532 N.W.2d 541. Based upon *Huron* and two Wisconsin cases, *Landwehr v. Citizens Trust Co.,* 110 Wis.2d 716, 329 N.W.2d 411 (1983), and *Nelson v. Motor Tech, Inc.,* 158 Wis.2d 647, 462 N.W.2d 903 (Ct.App.1990), Judge Randa found no duty existing independently or extraneously from the *Raytheon* real estate sale contract upon which plaintiffs' misrepresentation claims could stand and that Raytheon's fraud claims were "inseparably embodied within the terms

of the underlying contract," *Raytheon*, 979 F.Supp. at 873. He therefore dismissed the fraud in the inducement claim.

In *Budgetel I*, I disagreed with Judge Randa regarding the requirement that a fraud in the inducement claim not touch upon the quality or character of or be "interwoven" with the subject matter of a contract in order to survive. I predicted that Wisconsin courts would find that fraud in the inducement claims as a rule are not barred by the economic loss doctrine essentially for three reasons.

First, the practical effect of the requirement is a complete elimination of the exception for fraud in the inducement. An allegation that one was fraudulently induced into entering a contract of course will necessarily involve some reference to that contract. See Black's Law Dictionary at 661 (6th ed.1990), in which "fraud in the inducement" is defined as "[m]isrepresentation as to the terms, quality or other aspects of a contractual relation ... that leads a person to agree to enter into the transaction with a false impression or understanding of the risks, duties or obligations she has undertaken." Practically all reported cases involving application of the "interwoven" test resulted in the fraud in the inducement claim being dismissed. *See Budgetel I*, 8 F.Supp.2d at 1146–47.

Second, the tort of fraudulent inducement in reality always arises independently of a contract because it occurs prior to the formation of the contract and involves the common law duty of honesty as opposed to any duty brought about by the contract itself. *See id.* at 1147. According to the Supreme Court of Wisconsin "[t]he standard of honesty is unequivocal and ascertainable without regard to the character of the transaction in which the information will ultimately be relied upon." *Ollerman v. O'Rourke Co.*, 94 Wis.2d 17, 50, 288 N.W.2d 95 (1980).

And third, I found that the requirement conflicted with the policies underlying the economic loss doctrine set forth by the Wisconsin Supreme Court in *Daanen*. Regarding *Daanen*'s concern for protection of the freedom of commercial parties to allocate economic risk, I indicated that contract negotiations which begin with the assumption that

the other party is lying will hardly encourage free and open bargaining. I also found that dismissing a fraud in the inducement claim undermines *Daanen*'s policy of encouraging the commercial purchaser, as the party best situated to assess the risk of economic loss, to assume, allocate, or insure against that risk. When a seller is lying about the subject matter of the contract, the party best situated to assess and allocate the risk of economic loss is the seller, not the buyer. *See Budgetel I*, 8 F.Supp.2d at 1148.

In *Ice Bowl*, Judge Reynolds, like Judge Randa and myself, accepted that an exception to the economic loss doctrine may exist for fraud in the inducement claims. *Ice Bowl*, 14 F.Supp.2d at 1083. But where I held that in fact all claims for fraud in the inducement are excepted, Judge Reynolds followed the path of *Raytheon* and *Huron*, finding that the exception to the economic loss doctrine "is not without limitation." *Id.* According to Judge Reynolds, "[b]ecause of the linguistic flexibility possible under the label 'fraudulent inducement,' the court must 'look not at the label placed on the claim by the attorney, but rather on the substance of the claim.'" *Id.* at 1084 (quoting *Raytheon*, 979 F.Supp. at 872).

In deciding that he would limit the exception for fraud in the inducement claims, Judge Reynolds focused mainly on the status of the parties to a contract and the belief that in the commercial contracting arena, commercial entities are left to their own abilities to negotiate. He found that while Wisconsin law creates certain duties of honesty and good faith to protect, for instance, noncommercial purchasers of real estate and insureds, "[t]he economic loss doctrine holds that tort law does not provide this same generalized protection in the context of transactions between two commercial parties." *Id.* According to Judge Reynolds, because "commercial contracts do not usually directly implicate 'the concept of protecting society as a whole,' the parties to such a contract themselves determine the scope of their duties and the breach of those duties is actionable only in contract." *Id.* This is not indifference to the fate of commercial parties, said Judge Reynolds, but a grant of freedom

of contract: "The economic loss doctrine permits commercial parties to allocate risk more freely than in transactions where one of the parties is not a commercial actor. In turn, confinement to actions sounding in contract generally leaves contracting parties exposed to far more predictable liabilities than do tort actions." *Id.* "In sum, our law places great importance on the ability of commercial parties to freely ply their trade.... To ignore the contract, or write into it unexpected provisions based on the law of tort, would undo the predictability and freedom to bargain that lies at the heart of contract." *Id.*

According to *Ice Bowl,* adding an allegation of a culpable mental state to a claim that otherwise is one for breach of a commercial contract does not avoid the doctrine: "Nonperformance by any other name is still nonperformance." *Id.* Finding that the fraud in the inducement claim in *Ice Bowl* merely reiterated the facts underlying the breach of contract claim with the addition of a culpable mental state, Judge Reynolds dismissed the claim. *See id.* at 1083, 1084.

### III. ANALYSIS

■ Defendants argue that *Budgetel I* was clearly erroneous and a manifest error of law as exhibited by *Ice Bowl*'s reasoning. But *Ice Bowl*'s focus on the commercial status of the parties does not convince me that *Budgetel I,* based on the reasons summarized above, was erroneous. I may agree that when it comes to negligent misrepresentations and representations, intentional or not, made after entry into a contract and concerning performance of the contractual obligations, the economic loss doctrine properly limits commercial parties to their bargained-for remedies. I believe, however, that when it comes to intentional lies that induce someone into signing the contract in the first place, the economic loss doctrine should not, and does not, apply.

■ As Judge Reynolds indicates, " '[c]ontract law rests on obligations imposed by bargain.' " *Ice Bowl,* 14 F.Supp.2d at 1083 (quoting *Daanen,* 216 Wis.2d at 403, 573 N.W.2d 842). But the duty of honesty when negotiating a contract is not an obligation imposed by the contract, which does not yet exist, but instead by the common law. An intentional misrepresentation that induces one party to enter into an agreement draws into the question the validity of the agreement itself; no party, commercial or individual, should be limited solely to remedies under a contract that perhaps should be rescinded altogether. *See Siech v. Erv's Sales & Serv.,* 223 Wis.2d 802, 589 N.W.2d 456, 1998 WL 866091, *1 (Ct.App. Dec.15, 1998) (rescission of the contract is an appropriate remedy when a person's manifestation of assent to it is induced by a fraudulent misrepresentation). I do not agree that in regard to fraudulent inducement it is "folly to claim that the breach of contract, accompanied by some putatively culpable mental state, becomes a tort." *Ice Bowl,* 14 F.Supp.2d at 1084. As I explained in my June 22 decision, the culpable mental state for fraudulent inducement occurs before the contract even exists. That provides the independence and extraneousness from the contract required under Wisconsin law. The Wisconsin Supreme Court recognized as much in *Ollerman,* as quoted above.

■ *Ice Bowl* endangers the basic tenet of honesty itself. That decision places the "great importance on the ability of commercial parties to freely ply their trade" above the even more fundamental and imperative belief that when one speaks one must speak the truth. *See First Nat'l Bank v. Scieszinski,* 25 Wis.2d 569, 576, 131 N.W.2d 308 (1964) ("The law recognizes the duty of each to refrain from even attempted deceit of another with whom he deals, and the right of the latter to assume that he will do so." (internal quotation marks omitted)); Restatement (Second) of Torts § 525 (1977). As Judge Reynolds himself admits, "[t]ort law is rooted in the concept of protecting society as a whole." *Ice Bowl,* 14 F.Supp.2d at 1083. But "no interest of society is served by promoting the flow of information not genuinely believed by its maker to be true." *Ollerman,* 94 Wis.2d at 51, 288 N.W.2d 95 (quoting Restatement (Second) of Torts § 552 cmt. a (1977)). We are not talking here about mere negligent or innocent misrepresentation but rather outright, intentional lying. I disagree with *Ice Bowl*'s jettisoning of any duty of

honesty merely because the parties to a contract may be more sophisticated or better able to absorb risk than individual persons are. More sophistication brings with it more clever ways to lie. *Ice Bowl* gives commercial parties free reign to do so. Instead, in regard to fraudulent inducement I agree with Judge Barbara B. Crabb in *Stoughton Trailers, Inc. v. Henkel Corp.,* 965 F.Supp. 1227, 1236 (W.D.Wis.1997), wherein she concluded that public policy is better served by leaving a possible intentional tort lawsuit hanging over the head of a party—commercial or not—considering outright fraud.

Moreover, *Ice Bowl* does not address an important policy foundation for the economic loss doctrine as set forth by the Supreme Court of Wisconsin in *Daanen:* encouraging the *purchaser,* as the party best suited to assess risk, to assume, allocate, or insure against that risk. Judge Crabb has indicated that a party to a contract cannot rationally calculate the possibility that the other party will deliberately lie. *Stoughton,* 965 F.Supp. at 1236. I agree with that comment. And as I explained in *Budgetel I,* due diligence cannot protect against intentional dishonesty. When a seller is lying about the subject matter of a contract, the party best suited to assess the risk of economic loss switches from being the purchaser, who cannot possibly know which of several statements may be a lie, to the seller, who clearly knows.

 Defendants' second suggestion is that *Budgetel I* is clearly erroneous and will create a type of manifest injustice because I have created a split of authority in the district and made it impossible for potential litigants to predict how their cases will be decided. Defendants admit, however, that decisions of other district judges are not binding precedent that I must follow. *See TMF Tool Co. v. Muller,* 913 F.2d 1185, 1191 (7th Cir.1990); *United States v. Articles of Drug Consisting of 203 Paper Bags,* 818 F.2d 569, 572 (7th Cir.1987) (indicating that a single district court decision has little precedential effect and does not bind even other district judges in the same circuit). While the Seventh Circuit has indicated that it is "entirely proper," "laudable and worthwhile" for district judges to give deference to per-

suasive opinions of colleagues on the same court, *TMF,* 913 F.2d at 1191, it also recognizes that

> district judges in this circuit must not treat decisions *by other district judges,* in this and a *fortiori* in other circuits, as controlling, unless of course the doctrine of res judicata or of collateral estoppel applies. Such decisions will normally be entitled to no more weight than their intrinsic persuasiveness merits.... [T]he responsibility for maintaining the law's uniformity is a responsibility of appellate rather than trial judges....

*Colby v. J.C. Penney Co.,* 811 F.2d 1119, 1124 (7th Cir.1987), *quoted in TMF,* 913 F.2d at 1191.

I have great respect for Judges Randa and Reynolds and Chief Judge Stadtmueller and give their opinions great weight. Nevertheless, I analyzed the *Raytheon* decision in *Budgetel I* and found it unpersuasive regarding dismissal of a fraud in the inducement claim. And neither *Ice Bowl* nor *Home Valu* persuades me that my decision was wrong. The fact that I disagree with other judges in this district regarding the correct interpretation of Wisconsin case law does not create any unacceptable problem in the courts. It means only that the issue is debatable among reasonable jurists. Until guidance from the Wisconsin appellate courts or the Seventh Circuit comes along, each judge in this district is entitled to add his own interpretation to the mix.

In sum, I knew I was creating a conflict when I issued *Budgetel I* with *Raytheon* on the books; I found the conflict acceptable. The addition of Judge Reynolds and Chief Judge Stadtmueller on the opposing side of the fence does not persuade me to retreat from my position.

## IV. CONCLUSION

For all of these reasons,

**IT IS ORDERED** that the motion for reconsideration in light of *Ice Bowl* and *Home Valu* **IS DENIED.**