EYE CARE INTERNATIONAL, INC.,
Plaintiff/Counter–Defendant,

v.

David UNDERHILL, aka David R.
Underhill, Defendant/Counter-
Plaintiff.

No. 8:99–CV–1568–T–17E.

United States District Court,
M.D. Florida,
Tampa Division.

March 31, 2000.

Kevin Hackett O'Neill, Cheffy Passido-mo Wilson & Johnson, Naples, FL, for Eye Care International, Inc., plaintiff.

Karen E. Maller, Powell, Carney, Hayes, & Silverstein, P.A., St. Petersburg, FL, Barbara F. Florez, Gregory A. Ruehl-mann, White, Getgey & Meyer Co., L.P.A., Cincinatti, OH, for defendants.

## ORDER

KOVACHEVICH, District Judge.

This cause is before the Court on Plaintiff/Counter Defendant's motion to dismiss and/or for more definite statement, filed August 26, 1999, (Docket No. 4) and Defendant/Counter Plaintiff's response thereto, filed September 22, 1999, (Docket No.

8). This Court, having reviewed the motions and response submitted by counsel for the parties, does hereby find as follows:

## FACTS

The following facts, as taken from the pleadings in this cause, are found to be the facts only for the purpose of resolving the instant motion.

On March 19, 1996, Defendant/Counter–Plaintiff, R. David Underhill ("Underhill"), a resident of Cincinnati, Ohio, entered into an agreement ("Agreement") with Plaintiff/Counter–Defendant Eye Care International ("ECI") to participate in and/or market ECI's non-insurance based, discount fee for service network, offering members various discounts on services and goods in the ophthalmic/optometric industry. Underhill, as an employee and agent of ECI, was required to report and account to ECI for his sales activities and provide to ECI certain enrollment information. The Agreement was supplemented by subsequent mutual agreements by and between the parties regarding the nature and extent of compensation and services to be rendered. Underhill received commissions and compensation subject to withholdings from ECI by and through its principal place of business in Tampa, Florida.

ECI initiated this litigation by suing Underhill for fraud in the inducement, breach of agency contract, breach of employment contract, and accounting. Thereafter, Underhill filed an Answer and Counterclaim against ECI seeking recovery for breach of contract, fraud, fraud in the inducement, and for an accounting. ECI seeks to dismiss and/or for more definite statement regarding Underhill's Counterclaim.

## STANDARD OF REVIEW

Under *Conley v. Gibson,* a district court should not dismiss a complaint "for failure to state a claim unless it appears beyond a

doubt that the plaintiff can prove no set of facts" that would entitle the plaintiff relief, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80; *see also Bracewell v. Nicholson Air Servs.*, 680 F.2d 103, 104 (11th Cir.1982). To survive a motion to dismiss, a plaintiff may not merely "label" his or her claims. *Blumel v. Mylander*, 919 F.Supp. 423, 425 (M.D.Fla.1996).

In deciding a motion to dismiss, a court can examine only the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F.Supp. 232 (M.D.Fla.1995). The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low. *Ancata v. Prison Health Servs.*, 769 F.2d 700, 703 (11th Cir.1985). Also, a court must accept a plaintiff's well pled facts as true and construe the complaint in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Howry v. Nisus, Inc.*, 910 F.Supp. 576 (M.D.Fla.1995). However, when, on the basis of a dispositive issue of law, no construction of the factual allegations of a complaint will support the cause of action, dismissal of the complaint is appropriate. *Executive 100, Inc. v. Martin County*, 922 F.2d 1536 (11th Cir.1991), *cert. denied*, 502 U.S. 810, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991); *Powell v. United States*, 945 F.2d 374 (11th Cir.1991).

## MOTION TO DISMISS

### Count I—Breach of Contract

Plaintiff/Counter–Defendant seeks to dismiss Count I by arguing that the allegations are inconsistent, self-contradictory, and legally flawed, as well as contrary to Rule 10(b), Fed.R.Civ.P., because it intermingles various distinct, separate and conflicting claims and writings. Defendant/CounterPlaintiff responds to these allegations by preliminarily asserting that Ohio law and not Florida law, should apply to the performance and interpretation

of the contract. Defendant/Counter–Plaintiff relies on *Peoples Bank and Trust Co. v. Piper Aircraft Corp.*, 598 F.Supp. 377 (S.D.Fla.1984) as holding that when a contract fails to embody a choice of law provision, various factors such as where the contract was made, the place of performance of the contract, the location of the contract subject matter, the domicile, residence, nationality, place of incorporation, and place of business of the parties, are evaluated to determine whose law governs.

Defendant/Counter–Plaintiff argues that the essence of the dispute involves Defendant/Counter–Plaintiff's right to collect commissions for sales of Plaintiff/Counter–Defendant's Vision Care Network Plans to member businesses of the Cincinnati Chamber of Commerce. Defendant/Counter–Plaintiff also argues that while his sales activities were not restricted to Ohio, the vast majority of his sales activities and consummated sales were within Ohio. Furthermore, Defendant/Counter–Plaintiff contends that while Plaintiff/Counter–Defendant is principally located in Florida, its dealings with Defendant/Counter–Plaintiff were Cincinnati, Ohio based.

In its complaint, Plaintiff/Counter–Defendant asserts that the Agreement between Defendant/Counter–Plaintiff and Plaintiff/Counter–Defendant, for the receipt and distribution of payments, enrollment fees and commissions, was by and through Plaintiff/Counter–Defendant's principal offices in Tampa, Florida. (Docket No. 1). Additionally, Plaintiff/Counter–Defendant asserts that Defendant/Counter–Plaintiff continually reported to Plaintiff/Counter–Defendant and conducted business in Tampa Florida, including the continuous offering for sale membership in the Plaintiff/Counter–Defendant discount eyecare-eyewear program administered and directed through the Plaintiff/Counter–Defendant's offices in Tampa, Florida. (Docket No. 1).

■ A significant concern of conflicts jurisprudence is ensuring that a sufficient nexus exists between the parties and the law sought to be applied. From the existing record, the Court finds that Plaintiff/Counter–Defendant's acceptance and approval in Florida was the last act necessary for the creation of the contract. Therefore, Florida law and the law of the Eleventh Circuit applies to the interpretation of the contract. However, the Court now turns to the essence of Plaintiff/Counter–Defendant's Motion to Dismiss Count I.

Plaintiff/Counter–Defendant relies upon Rule 10(b), Fed.R.Civ.P., for dismissal of Count I. Plaintiff/Counter–Defendant alleges that Defendant/Counter–Plaintiff seeks recovery of substantial damages based upon three writings entitled the "Agreement", "Independent Agency Agreement", and "letter agreement" (Exhibits A, B, and C to Counterclaim). Plaintiff/Counter–Defendant argues that this is over-incorporation and is legally deficient because it intermingles various distinct, separate, and conflicting claims and writings. Plaintiff/Counter–Defendant contends that Count I is contrary to Rule 10(b) because it does not limit each claim to a statement of a single set of circumstances or segregate claims by separate transaction or occurrence. Additionally, Plaintiff/Counter–Defendant contends that neither party executed the "independent agency agreement" (Exhibit B to Counterclaim) and Plaintiff/Counter-Defendant neither executed nor endorsed the "letter agreement" (Exhibit C to Counterclaim). Moreover, Plaintiff/Counter–Defendant maintains that both documents allegedly modify and conflict with the Agreement (Exhibit A to Counterclaim) because the Agreement is executed by both parties and indicates that it "shall not be modified except by an agreement in writing executed by the parties."

Defendant/Counter–Plaintiff responds that the three writings referenced in Count I of its Counterclaim represent the changing roles of Defendant/Counter–Plaintiff's relationship with Plaintiff/Counter–Defendant over the years. Defendant/Counter-Plaintiff alleges that the initial Agreement was modified from time to time by the parties' agreement and by issuance of an Independent Agency Agreement. Defendant/Counter–Plaintiff further maintains that while the Independent Agency Agreement was not signed by the parties, Plaintiff/Counter–Defendant's actions established and carried out the policies and practices set forth in that document when Plaintiff/Counter–Defendant paid commissions to Defendant/Counter–Plaintiff.

■ Rule 10(b), Fed.R.Civ.P., provides that "Paragraphs; Separate Statements ... Each claim founded upon a separate transaction or occurrence and each defense other than denials shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth." This Court disagrees with Plaintiff/Counter–Defendant's allegation that Defendant/Counter–Plaintiff's incorporation of all three writings in Count I intermingles various distinct, separate and conflicting claims and writings and therefore, fail to constitute a consistent basis for recovery.

Both parties contend, Plaintiff/Counter–Defendant in its Complaint (Docket No. 1) and Defendant/Counter–Plaintiff in its Answer and Counterclaim (Docket No. 3) that the Agreement was supplemented by subsequent mutual agreements by and between the parties regarding the nature and extent of compensation and services to be rendered. This Court agrees with Defendant/Counter–Plaintiff that the three documents represent the changing roles of Defendant/Counter–Plaintiff's relationship with Plaintiff/Counter–Defendant and are not three separate and conflicting claims and writings in violation of Rule 10(b).

This Court concludes that Defendant/Counter–Plaintiff bases its entire claim for relief on a single transaction, and has alleged separate causes of action based on a single transaction. Since 10(b) is inapplicable to multiple claims arising out of a single transaction, it would be inappropriate to dismiss Count I under Fed. R.Civ.P., Rule 10(b).

Accordingly, Plaintiff/Counter–Defendant's Motion to Dismiss Count I of Defendant/Counter–Plaintiff's Counterclaim, pursuant to Rule 10(b), is denied.

### Count II—Fraud and Count III— Fraud in the Inducement

Plaintiff/Counter–Defendant asserts that Counts II and III are barred by the economic loss rule because both Counts seek the identical damages as the breach of contract claim. Plaintiff/Counter–Defendant correctly cites *Florida Power & Light Co. v. Westinghouse Electric Corp.*, 510 So.2d 899, 902 (Fla.1987) as holding that the economic loss doctrine is to prohibit a party from suing in tort for purely economic losses for a product or services provided to another for consideration where contract principles are more appropriate than tort principles for resolving economic loss. Plaintiff/Counter–Defendant, in addition to citing other cases, relies on *AFM Corp. v. Southern Bell Tel. & Tel. Co.*, 515 So.2d 180 (Fla.1987), as holding that the rule has been applied to economic losses arising out of service contracts, and to bar various tort claims, including fraud, that are independent from the contract claim. Plaintiff/Counter–Defendant contends that Defendant/Counter–Plaintiff's Count II claim of fraud and the related damages fail to constitute an independent tort on its face. Plaintiff/Counter–Defendant further asserts that Count III, the claim for fraud in the inducement, may only exist in a contractual setting if the underlying allegations constitute an independent tort. Plaintiff/Counter–Defendant argues that these claims are related to and are not independent from the breach of contract claim for damages.

Defendant/Counter–Plaintiff argues that fraud in the inducement is not barred under the economic loss rule. Defendant/Counter-Plaintiff argues that, in essence, both the fraud claims in Counts II and III are fraud in the inducement claims. Defendant/Counter–Plaintiff contends that an exception to the economic loss rule allows causes of action based upon torts if they are independent of the contractual breach, such as fraudulent inducement. *See Clayton v. State Farm Mutual Automobile Insurance Co.*, 729 So.2d 1012 (Fla. 3rd DCA 1999). Defendant/Counter-Plaintiff maintains that his damages, if proven, are not limited to the compensation agreement entered into with Plaintiff/Counter–Defendant. Defendant/Counter-Plaintiff contends that these damages would also contemplate lost business opportunities and profits which he would have otherwise realized had he not been fraudulently induced to promote and continue to promote Plaintiff/Counter–Defendant's products.

Under current Florida law, "contract principles are more appropriate than tort principles to resolve purely economic claims." *Florida Power & Light Co.*, 510 So.2d at 900. Florida courts apply the economic loss rule to prevent tort recovery "when damages flow from a breach of contract unless the tort is independent of the breach of contract." *Brass v. NCR Corp.*, 826 F.Supp. 1427, 1428 (S.D.Fla.1993). The test to determine the independence of a fraud claim revolves around the performance of the contract. *See HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So.2d at 1240; *Williams Elec. Co., Inc. v. Honeywell, Inc.*, 772 F.Supp. 1225, 1238 (N.D.Fla.1991). If claims relate to fraud in the performance, the economic loss rule will preclude fraud recovery. *Williams*

*Elec. Co.,* 772 F.Supp. at 1238. Even allegations that the fraud induced the plaintiff to perform additional acts and incur additional expenses will not raise the fraud to an acceptable level of independence. *ThunderWave, Inc. v. Carnival Corp.,* 954 F.Supp. 1562, 1567 (S.D.Fla.1997). In *ThunderWave,* the court held that since the plaintiff did not show fraud in the inducement, the alleged fraud was "interwoven with the breach of contract" and was barred. *See Id.* at 1568.

■ Florida courts have analyzed a defendant's fraudulent conduct in relation to the breach of contract and the distinction in damages between the fraud and the contract claim. *See Williams Elec. Co.,* 772 F.Supp. at 1238. The Florida Supreme Court has held that "a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract." *HTP, Ltd.,* 685 So.2d at 1239; *AFM Corp.,* 515 So.2d at 181. Where the facts surrounding a breach of contract action are indistinguishable from an alleged tort, and where the alleged tort does not cause harm distinct from that caused by the breach of contract, a plaintiff is barred from bringing a separate tort action. *Serina v. Albertson's, Inc.,* 744 F.Supp. 1113, 1117–18 (M.D.Fla.1990). An independent tort "requires proof of facts separate and distinct from the breach of contract." *HTP, Ltd.,* 685 So.2d at 1239.

■ Defendant/Counter–Plaintiff correctly asserts that an exception has been made for causes of actions based on torts that are independent of the contractual breach, such as fraudulent inducement. However, as cited by Defendant/Counter–Plaintiff, where the alleged fraudulent misrepresentation is inseparable from the essence of the parties' agreement, the economic loss rule still applies. *See Straub Capital Corp. v. L. Frank Chopin, P.A.,* 724 So.2d 577 (Fla. 4th DCA 1998). Here,

Defendant/Counter–Plaintiff's allegations of misrepresentation are directly related to the alleged breach, and, therefore, do not support an independent tort action. Presuming that the allegations are true, the intentional act of making misrepresentations regarding the Agreement and the compensation, and continuing to make those misrepresentations to induce Defendant/Counter–Plaintiff to generate large volumes of business, is the same act that breached the contract. The misrepresentations are inseparable from the essence of the parties' Agreement and the factual inquiry needed to prove such allegations will be the same. Therefore, the facts surrounding the tort claims are "interwoven" with the facts surrounding the breach of contract claim. Taken in the light most favorable to the Defendant/Counter–Plaintiff, the Counterclaim fails to state a claim. There is nothing in the Counterclaim that alleges an "intentional or negligent" act that could be considered independent of the acts that allegedly breached the contract. *See HTP, Ltd.,* 685 So.2d at 1239.

Since the fraud claims are not independent, the damages are not distinct. The additional damages of lost business opportunities and profits, identified by Defendant/Counter–Plaintiff, flow from the alleged breach of contract and do not spring up from an identifiable independent tort.

Accordingly, Plaintiff/Counter–Defendant's Motion to Dismiss Counts II and III of Defendant/Counter–Plaintiff's Counterclaim is granted.

### Count IV—Accounting

Plaintiff/Counter–Defendant asserts that Defendant/Counter-Plaintiff seeks an accounting from it to determine the amount of commissions being claimed by him. Plaintiff/Counter-Defendant argues that Defendant/Counter–Plaintiff is claiming an accounting entitlement simply because he cannot determine "with specificity" the

amount due. Plaintiff/Counter-Defendant relies on Florida law to assert that an action for an accounting is considered an extraordinary remedy and is not permitted as a matter of course unless exceptional circumstances are plead and established. Plaintiff/Counter–Defendant maintains that there are no allegations sufficient to demonstrate a complex transaction.

Defendant/Counter–Plaintiff responds by asserting that the Florida cases cited by Plaintiff/Counter–Defendant rely on the Supreme Court's opinion in *Charles Sales Corp. v. Rovenger,* 88 So.2d 551 (Fla.1956), which has been seriously called into question by more modern opinions from the Florida courts. In addition, Plaintiff/Counter–Defendant contends that the existence of a fiduciary relationship gives rise to an accounting and that the employment relationship alleged in the Counterclaim is such a relationship and gives rise to the right to an accounting. Furthermore, Defendant/Counter–Plaintiff contends that the cased cited by Plaintiff/Counter–Defendant all deal with actions for equitable relief only, and thus, are inapplicable to this case.

■■■ Under Florida law, a party seeking an equitable accounting must show the existence of a fiduciary relationship or a complex transaction and must demonstrate that the remedy at law is inadequate. *Kee v. National Reserve Life Insurance Co.,* 918 F.2d 1538, 1540 (11th Cir.1990). This Court agrees with Defendant/Counter–Plaintiff that the employment relationship as alleged in his Counterclaim asserts the existence of a fiduciary relationship such as could give rise to the right to an accounting.

Accordingly, Plaintiff/Counter–Defendant's Motion to Dismiss Count IV of Defendant/Counter–Plaintiff's Counterclaim is denied.

## *MOTION FOR A MORE DEFINITE STATEMENT*

Plaintiff/Counter Defendant asserts, in the alternative, that Defendant/Counter-

Plaintiff provide a more definite statement, pursuant to Federal Rule of Civil Procedure 12(e), in order to rectify the vagueness and ambiguity present in the complaint.

This Court has held that in the federal system, the rules of civil procedure employ the concept of notice pleading and motions for a more definite statement are not favored in light of the liberal discovery practice. *Scarfato v. National Cash Register Corp.,* 830 F.Supp. 1441 (M.D.Fla.1993). A motion for a more definite statement should only be granted when the pleading to which the motion is directed is so ambiguous or vague that a party cannot be reasonably expected to respond. *Id.* Furthermore, a motion for more definite statement is not to be used as a substitute for discovery. *See Delta Education, Inc. v. Langlois* 719 F.Supp. 42, 51 (D.N.H.1989); *Famolare, Inc. v. Edison Bros. Stores, Inc.,* 525 F.Supp. 940, 949 (E.D.Cal.1981).

Plaintiff/Counter–Defendant asserts that Count I inappropriately alleges three (3) different transactions or occurrences that are self-destructive in one count: (1) the Agreement; (2) the Independent Agency Agreement; and (3) the letter agreement. Rule 10(b), Fed.R.Civ.P., states that "[e]ach claim founded upon a separate transaction or occurrence ... shall be stated in a separate count or defense whenever a separation facilitates the clear presentation of the matters set forth." Plaintiff/Counter-Defendant further argues that the Counterclaim fails to comply with Rule 8(a)(2), Fed.R.Civ.P. since it fails to contain a short and plain statement of the claim showing Defendant/Counter–Plaintiff is entitled to relief. Furthermore, Plaintiff/Counter–Defendant alleges that the Counterclaim fails to comply with Rule 8(e)(1), Fed.R.Civ.P. since it fails to contain averments which are simple, concise, and direct.

Rule 8(a)(2), Fed.R.Civ.P., requires that a party state a "short and plain statement

of the claim showing that the pleader is entitled to relief." The Court finds that the counterclaim meets this requirement. The counterclaim does not fall to a level of ambiguity that requires a separation to facilitate the "clear presentation" of matters. This Court finds that the Counterclaim is sufficiently structured, and worded in such a way, that Plaintiff/Counter–Defendant has ample opportunity to frame a responsive pleading.

Accordingly, Plaintiff/Counter–Defendant's Motion for a More Definite Statement is denied.

**ORDERED** that Plaintiff/Counter Defendant's Motion Dismiss and/or For More Definite Statement (Docket No. 4) be **DENIED** as to Counts I and IV and **GRANTED WITH PREJUDICE** as to Counts II and III. Plaintiff/Counter–Defendant shall have ten (10) days from the date of this order to answer Defendant/Counter–Plaintiff's Counterclaim.