LAY, Circuit Judge,
concurring in part and dissenting in part.
With the exception of the majority’s holding regarding Marvin’s warranty of future performance claims, in which I concur, I cannot join the majority opinion. First, I disagree with the majority’s definition of a “merchant in goods of the kind” and its application of the term to Marvin. Second, I disagree with the majority’s treatment of Marvin’s fraud and fraudulent inducement claims under the economic loss doctrine. I respectfully submit that throughout its analysis, the majority ignores a basic principle of federalism mandated in Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), that federal courts deciding diversity cases shall apply state substantive law and not their own interpretation of what the law should be.
A. Merchant in Goods of the Kind
In Regents of the Univ. of Minnesota v. Chief Indus., Inc., 106 F.3d 1409 (8th Cir. *889 1997), this court tackled the proper definition of “merchant in goods of the kind” for purposes of applying the economic loss doctrine as codified at MinmStat. § 604.10. The majority in Chief Industries, relying on the U.C.C.’s definition of “merchant” as found at Minn.Stat. § 336.2-104(1), held that a merchant in goods of the kind need not be a dealer in like goods. Rather, the court found it sufficient that the merchant simply had “specialized knowledge of the goods.” Chief Indus., 106 F.3d at 1411. The dissent in Chief Industries relied on Lloyd F. Smith Co. v. Den-Tal-Ez, Inc., 491 N.W.2d 11 (Minn.1992), to urge that a “merchant in goods of the kind” is one who is a dealer in the same goods. The dissent noted:
When it enacted § 604.10(a) in 1991, had it so desired, the Minnesota legislature could have chosen the broad term “merchant” as generally defined by § 336.2-104(1) instead of “merchants in goods of the kind.” The legislature’s choice instead to incorporate the limiting language [found in Den-Tal-Ez ] manifests its intent to narrow application of the economic loss doctrine. There is no inconsistency in this obvious, clarifying provision, with § 336.2-104(1). The intended purpose of § 604.10 was to overcome Hapka’s broad language, based on § 336.2-104(1), so that ordinary consumers will not be denied their “economic loss arising from the sale of goods.”
In contrast, the majority opinion today declares that limiting § 604.10 to dealers “would create an unwarranted inconsistency” with § 336.2-104. But by incorporating § 336.2-104’s broad definition of “merchant” as it regards goods of the kind (i.e., by including not just dealers but also others whose occupation or employment of another gains them some specialized knowledge in the goods) the majority contradicts the very intent of § 604.10.
Chief Indus., 106 F.3d at 1413-14 (Lay, J., dissenting) (footnotes omitted) (citations omitted).
In Jennie-O Foods, Inc. v. Safe-Glo Prods. Corp., 582 N.W.2d 576 (Minn.Ct.App.1998), the Minnesota Court of Appeals made clear that state courts should follow the dissent in Chief Industries. The Jennie-0 court rejected the reasoning set forth by the Chief Industries majority that years of experience in purchasing a product or a component thereof brings specialized knowledge, thereby qualifying the purchaser as a “merchant” under the U.C.C. and a “merchant in goods of the kind” under the economic loss doctrine. Instead, the Jennie-0 court decided to adopt and apply the narrower definition of “merchant in goods of the kind” as set forth in Den-TaV-Ez and the Chief Industries dissent.
Notwithstanding the specific mandate of the Minnesota Court of Appeals, the majority in this case adopts the now rejected approach of the Chief Industries majority and applies the U.C.C.’s definition of “merchant” in determining whether Marvin is a merchant in goods of the kind under Minnesota law. It concentrates on Marvin’s “specialized knowledge” notwithstanding the Minnesota courts’ rejection of that standard.
As the majority recognizes, federal courts must follow intermediate state court decisions “unless [the federal court] is convinced by other persuasive data that the highest court of the state would decide otherwise.” Commissioner v. Estate of Bosch, 387 U.S. 456, 465, 87 S.Ct. 1776, 18 L.Ed.2d 886 (1967). In the present case, the majority reasons:
Where a manufacturer with sophisticated knowledge of a component purchases and incorporates that component into its product, the manufacturer is a not merely a dealer with respect to finished product, but with respect to the component part as well. Thus, Marvin was a dealer with respect to the transactions here in issue and the economic loss doctrine operates to limit Marvin’s claims.
This reasoning is not in accordance with Minnesota law. Under Jennie-O, a mer *890 chant in goods of the kind is not so characterized merely by its specialized knowledge. It is equally untenable to argue that a party is a dealer (and, thus, a merchant in the goods of the kind) because of its sophisticated knowledge of a product component.
The majority’s erroneous analysis leads it to hold that Marvin, with its sophisticated knowledge of a component part, is “in the business of selling treated wood products.” While it is true that Marvin is engaged in the manufacture and sale of windows and wooden doors, in order to fit its own purposes the majority overstates the nature of Marvin’s business. Marvin does not deal in raw lumber, it does not deal in plate glass, and, likewise, it does not deal in wood preservatives. In its relationship with PPG, Marvin is a consumer who simply uses wood preservatives as a component part in its windows. Under the majority’s rationale, every manufacturer who buys a widget in order to manufacture a product will always be deemed to be a merchant who deals in widgets. There is no law in Minnesota or elsewhere which supports this position.[2] As such, Marvin is not a merchant in goods of the kind, and, in accordance with Deiv-Tal-Ez, the economic loss doctrine should not prevent Marvin from alleging damages to other property as a result of the defective PILT.
B. Fraud and Misrepresentation
The majority bars all fraudulent misrepresentations not independent of the Article 2 contract under Minnesota’s economic loss doctrine. It does so not on the basis of Minnesota law, but upon another court of appeals panel’s prediction of Minnesota law found in AKA Distrib. Co. v. Whirlpool Corp., 137 F.3d 1083 (8th Cir.1998). I respectfully submit that our court in AKA overlooked the Minnesota Supreme Court’s treatment of fraudulent claims in the face of the economic loss doctrine as set forth in Butter v. A.O. Smith Harvestore Prods., Inc., 518 N.W.2d 537 (Minn.1994). Furthermore, I respectfully submit that the majority’s reliance upon AKA, to the extent it is a proper prediction of state law, is misplaced.
The Minnesota Supreme Court first introduced the economic loss doctrine in Superwood Corp. v. Siempelkamp Corp., 311 N.W.2d 159 (Minn.1981), overruled on other grounds, Hapka v. Paquin Farms, 458 N.W.2d 683 (Minn.1990), borrowing from the California Supreme Court’s decision in Seely v. White Motor Co., 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965) (in bank). Nearly thirteen years later, in Butter, the court was again faced with a tort claim (this time a fraud claim) based on allegations of economic loss. In discussing the procedural history of the case, the court took note of the district court’s dismissal of the plaintiffs’ negligence and strict liability claims on the basis of the economic loss doctrine, as well as its decision to permit the plaintiffs’ fraud claim to go forth. Without so much as a passing mention of the economic loss doctrine, the Minnesota Supreme Court considered the viability of the fraud claim. Thus, the court implicitly recognized that the fraud claim could be maintained if the parties had tried that issue by consent. By all appearances, the Butter court simply assumed that an action in common law fraud in Minnesota was not subsumed by the economic loss doctrine. *891 Minnesota Statute § 604.10(e), which explicitly states that fraud claims are not barred under the economic loss doctrine, merely restates and codifies the Minnesota common law. On this basis, Marvin makes a strong argument that this court in AKA misapplied Minnesota law in making its prediction. Instead of focusing on this inherent weakness in AKA, however, the majority adopts its holding without question. This is error.
C. Fraudulent Inducement to Contract
Even setting aside Butter and its effect on AKA’s prediction of state law, I find the majority has misapplied AKA to the facts of this case. In AKA, this court predicted that the Minnesota Supreme Court would apply the economic loss doctrine to preclude all fraud claims with the exception of those fraudulent misrepresentations made independent from and collateral to the contract. The majority makes a conclusory determination that Marvin’s fraudulent inducement claim is not independent of the contract because it tangentially relates to the subject matter of the contract. The majority argues that Marvin’s fraud claims “all revolve around one central allegation: PPG misled Marvin into believing that PILT would be an effective product, but PILT failed.” The majority opinion goes on and says that the “only harms alleged arose from PILT’s inefficacy, not, for example, from PILT’s difficulties with certification.” The majority expresses astonishment at the argument that Marvin’s fraudulent inducement claim is independent of and collateral to the breach of contract claim.
I respectfully submit that the majority’s discussion misunderstands the basic principles of a claim of fraudulent inducement. Where the misrepresentation of present fact serves as an inducement for the contract, it is not duplicitous of the breach of contract claim. As the New York Court of Appeals stated in Deerfield Communications Corp. v. Chesebrough-Ponds, Inc., 68 N.Y.2d 954, 510 N.Y.S.2d 88, 502 N.E.2d 1003 (1986):
The measure of damages recoverable for being fraudulently induced to enter into a contract which otherwise would not have been made is indemnity for the loss suffered through that inducement. Here the jury was properly allowed to award damages to defendant on the [fraudulent inducement] counterclaim for the costs to locate the goods, the costs to repurchase the goods, storage fees and disposal costs, and under the [breach of contract] counterclaim for the balance remaining due on the purchase price for the goods sold and delivered.
Deerfield, 510 N.Y.S.2d 88, 502 N.E.2d at 1004-05 (quotation omitted). Thus, the policy behind the economic loss doctrine (i.e., the avoidance of duplicative damages) is not at issue when the tort alleged is fraudulent inducement.
The definition of “fraud in the inducement” as stated in Black’s Latv Dictionary 671 (7th ed.1999), is:
Fraud occurring when a misrepresentation leads another to enter into a transaction with a false impression of the risks, duties, or obligations involved; an intentional misrepresentation of a material risk or duty reasonably relied on, thereby injuring the other party without vitiating the contract itself, esp. about a fact relating to value.
In the earlier Sixth Edition of Black’s Law Dictionary 661 (6th ed.1990), “fraud in the inducement” is defined as a “[m]isrepre-sentation as to the terms, quality or other aspects of a contractual relation.” Any fraudulent inducement made by a seller to a buyer to induce the buyer to enter into a contract will always relate to the subject matter of the contract; thus, the majority’s test creates an inherent difficulty in ever finding a claim of fraudulent inducement independent of the contract. This analysis overlooks the fundamental basics of a fraudulent inducement claim.
Moreover, the Tenth Circuit in United Int’l Holdings, Inc. v. Wharf (Holdings) *892 Ltd., 210 F.3d 1207 (10th Cir.2000), cogently explained why fraudulent inducement claims should not be barred under the economic loss doctrine.
Where a negligence claim is based only on breach of a contractual duty, the law of contract rightly does not punish the breaching party, but limits the breaching party’s liability to damages that naturally flow from the breach. It is an altogether different situation where it appears two parties have in good faith entered into a contract but, in actuality, one party has deliberately made material false representations of past or present fact, has intentionally failed to disclose a material past or present fact, or has negligently given false information with knowledge that the other party would act in reliance on that information in a business transaction with a third party. The breaching party in this latter situation also is a tortfeasor and may not utilize the law of contract to shield liability in tort for the party’s deliberate or negligent misrepresentations.
United Int’l Holdings, 210 F.3d at 1226-27.
Hence, the basic obstacle in the majority’s application of AKA to fraudulent inducement claims in general is difficult to surmount. However, the majority’s position is even more untenable when one considers the facts underlying Marvin’s fraud in the inducement claim.
1. Marvin’s Fraudulent Inducement Claim
Marvin urges that the record supports allegations of fraudulent inducement in four ways. First, Marvin claims PPG represented that it undertook years of long-term field testing of Marvin’s PILT formulation. Marvin supports this allegation with detailed evidence that, if true, leaves no question that a reasonable jury could find such representation was made and that it was false. Obviously this claim “relates” to the contract; however, such inducement is not subsumed by Marvin’s warranty claims. The representation has nothing to do with the quality of the preservative, which is allegedly covered by the warranty claims. Rather, it relates to the history and background of the formulation’s use. If true, Marvin’s allegations expose a deceitful, independent inducement by PPG to buy its product.
The second allegation of fraudulent inducement is PPG’s supposed representation that Marvin would receive the same PILT formulation as that used by Andersen Windows, an industry leader for which Marvin holds high regard. This representation relates to neither the quality nor the character of the PILT formulation. It does relate, however, to the identity of the formulation to be sold. If false, this representation constituted clear trickery by PPG to independently induce Marvin to enter into the contract. To suggest that this representation relates to the quality and character of the product and is thereby covered by warranty requires syllogistic reasoning that gives way to the most simplistic challenge. If the product sold to Marvin was indeed defective, as is now claimed, that is totally irrelevant to whether Andersen Windows used the same formulation with success.
The third allegation of fraudulent inducement relates to PPG’s representation that the PILT formulation successfully met industry standards and tests. One would assume that a product that successfully met those standards and tests would be trustworthy; however, there was nothing in the negotiations between Marvin and PPG which required the PILT to meet such standards. Thus, the representation is wholly independent of the contract, and the alleged statement served as an independent inducement for Marvin to purchase the PILT.
Finally, Marvin’s claim that PPG used a “bait and switch” technique by supplying Andersen PILT for testing and switching the formulation at the time of Marvin’s purchase is sufficiently collateral to the *893 contract to survive the economic loss doctrine and AKA. Marvin asserts that the PILT it purchased was not the same as the test samples PPG supplied. This allegedly fraudulent misrepresentation has nothing to do with the contract other than to induce Marvin to believe that the PILT sold to it was the same formulation that Andersen used. Once again, the fraud relates to the identity of the product being sold rather than the quality or character of the PILT.

2. Application of AKA and Huron Tool

The majority errs in its overly broad application of AKA and the economic loss doctrine. As the Seventh Circuit recently stated in All-Tech Telecom, Inc. v. Amway Corp., 174 F.3d 862, 866-67 (7th Cir.1999):
Some of our cases describe the economic-loss doctrine in words that might seem to imply the abolition of the tort of misrepresentation (including deliberate fraud) in all cases in which the plaintiff and the defendant are business firms having a preexisting contractual relationship that had given rise to the fraud or other misrepresentation....
If commercial fraud is to go completely by the boards, as a literal reading of some of the economic-loss cases might suggest, then prospective parties to contracts will be able to obtain legal protection against fraud only by insisting that the other party to the contract reduce all representations to writing, and so there will be additional contractual negotiations, contracts will be longer, and, in short, transaction costs will be higher. And the additional costs will be incurred in the making of every commercial contract, not just the tiny fraction that end up in litigation. Granted, there are costs of uncertainty from the possibility of falsely charging fraud when a contractual relationship sours, as it did in this case. But the fraud tort comes with safeguards against false claims, such as the requirement of pleading fraud with particularity and (in many though not all jurisdictions) a heightened burden of proof — clear and convincing evidence versus a bare preponderance of the evidence, the standard civil burden.
Applying this observation to the facts of the case at bar, how would one contemplate a warranty relating to testing, national approval, bait and switch tactics, and successful use by others? To require parties to anticipate misrepresentations on such extraneous subjects is to force them to enter into contractual negotiations with a general and perhaps unbased distrust and suspicion of each other. Marvin’s claim should not be stifled by such an irrational interpretation of the economic loss doctrine.
It is indisputable under the case law that an independent tort, for purposes of the Huron Tool exception, “requires proof of facts separate and distinct from the breach of contract.” Eye Care Int’l, Inc. v. Underhill, 92 F.Supp.2d 1310, 1315 (M.D.Fla.2000) (quotation omitted). The facts which comprise Marvin’s breach of warranty claims are completely separate from those forming the basis of the fraudulent inducement allegations. Marvin argues that PPG breached its warranty of future performance by stating that PILT is equally or more effective than Penta and expressly representing to Marvin that PILT would remain effective in preventing rot for at least twenty-six years. The aforementioned fraudulent inducement claim makes no mention of these or any other statements of future performance. Thus, the evidence necessary to prove Marvin’s fraud in the inducement claim is separate and distinct from that required to prove breach of warranty by PPG. In fact, the fraud allegations could conceivably be actionable even if PILT had worked as it was intended.
A survey of the cases applying the independent fraud requirement of the economic loss doctrine shows that Marvin’s allegations are not of the same nature as other types of commonly barred misrepresenta *894 tions. Those representations which are frequently barred either restate the underlying defect that is the basis for the breach of contract claim or reiterate the breaching party’s failure to perform under the contract. Marvin’s claims do neither.
a. Allegations Related to Product Defect
The quality and characteristics exception, as articulated in Huron Tool and Eng’g Co. v. Precision Consulting Servs., Inc., 209 Mich.App. 365, 532 N.W.2d 541 (1995), and its progeny, is a method of forcing parties to execute warranties to protect against defects that the contracting parties could rationally foresee as hampering the effectiveness of the product. As the Supreme Court of Wisconsin explained in Northridge Co. v. W.R. Grace and Co., 162 Wis.2d 918, 471 N.W.2d 179, 185 (1991), economic loss damages are “intended to protect purchasers from losses suffered because a product failed in its intended use.” Hence, product defects in the suitability and quality of the good are redressed through actions in contract. See id. Likewise, under the economic loss doctrine, “where the only misrepresentation by the dishonest party concerns the quality or character of the goods sold, the other party is still free to negotiate warranty and other terms to account for possible defects in the goods.” Huron Tool, 532 N.W.2d at 545 (emphasis added). See also Rich Prods. Corp. v. Kemutec, Inc., 66 F.Supp.2d 937, 969 (E.D.Wis.1999) (“When contractual expectations are frustrated because of a defect in the subject matter of the contract, a party’s remedy lies exclusively in contract.”); Douglas-Hanson Co. v. BF Goodrich Co., 229 Wis.2d 132, 598 N.W.2d 262, 267 (1999) (same), aff'd, 233 Wis.2d 276, 607 N.W.2d 621 (2000) (per curiam); Theuerkauf v. United Vaccines Div. of Harlan Sprague Dawley, Inc., 821 F.Supp. 1238, 1241-42 (W.D.Mich.1993) (“[T]he only remedy for claims relating to the performance of the product, such as a claim that the product did not work as it was supposed to work, may be brought under contract law.”). Because Marvin’s fraudulent inducement claim is unrelated to the underlying defects in PILT, it should not fall victim to this application of the economic loss doctrine.[3]
*895 The running theme in this category of cases is the recharacterization of a contract-breaching defect as a fraudulent misrepresentation. All the rejected allegations relate to the cause of the failure in the subject of the contract. Marvin’s fraudulent inducement claim, however, does not recharacterize the contract-breaching defect as a fraudulent misrepresentation. The fraud in the inducement asserted in this case does not allege hidden problems that prevented PILT from working properly; rather, Marvin alleges independent, affirmative misrepresentations unrelated to the internal efficacy of the PILT.
Indeed, in Closed Circuit Corp. v. Jerrold Elecs. Corp., 426 F.Supp. 361 (E.D.Pa.1977), the court positively commented about a fraud claim strikingly similar to one of Marvin’s claims. The defendant allegedly misrepresented that its electronic transmitter had received FCC-type acceptance when it had not yet received such approval. The court discussed the merits of this claim subsequent to, and separate from, its discussion distinguishing contract and tort claims. One of Marvin’s fraud allegations involves PPG’s representation that PILT successfully met industry standards. The similarity of this claim to that in Closed Circuit is clear. Marvin’s claims are categorically different from those that restate contract-breaching defects and fall victim to the economic loss doctrine. Hence, the majority errs in barring Marvin’s fraudulent inducement claims.
b. Allegations Related to Failure to Perform
Allegations couched in terms of fraud and restating the breaching party’s failure to perform under the contract also fall victim to the economic loss doctrine. See *896 Dantzler Lumber & Export Co. v. Burlington Lumber Co., 968 F.Supp. 1543, 1547 (M.D.Fla.1997) (“If claims relate to fraud in the performance, the economic loss rule will preclude fraud recovery.”). Where claims of fraud are interwoven with the breach, the alleged misrepresentations concern the breaching party’s performance under the contract, and the misrepresentations do not create an independent tort cause of action. See Huron Tool, 532 N.W.2d at 545. See also GBJ Corp. v. Eastern Ohio Paving Co., 139 F.3d 1080, 1088 (6th Cir.1998) (“[T]he defendant must have fraudulently induced the plaintiff to enter into the agreement, and that inducement must be a promise other than merely pledging to perform the terms of the contract.”).
In each of the cases within this category, the allegations of fraud revolve around the breaching party’s failure to live up to its promises under the contract.[4] Unlike *897 these cases, Marvin’s fraud allegations are not reiterations of PPG’s failure to perform future acts under the contract. Rather, Marvin’s allegations concern misrepresentations of present, material facts, unrelated to the quality and efficacy of the product itself, which were untrue at the time of making. Marvin’s fraud in the inducement claim should not fall to the wayside under this second category of cases.[5]
It is clear from the preceding case recitation that courts have been more likely to bar a fraud claim under the economic loss doctrine than to fit it under the “independent of the contract” exception. As the court in Budgetel Inns, Inc. v. Micros Sys., Inc., 8 F.Supp.2d 1137, 1146 (E.D.Wis.1998), noted, this may be a function of the basic inapplicability of the Huron Tool exception to fraudulent inducement claims. Nevertheless, courts have declined to apply the economic loss doctrine to fraudulent inducement-type claims in several instances. See e.g., United Int’l Holdings, 210 F.3d 1207 (10th Cir.2000) (applying Colorado law); Florian Greenhouse, Inc. v. Cardinal IG Corp., 11 F.Supp.2d 521 (D.N.J.1998) (applying New Jersey law-defendant’s misrepresentation of terms of contract with plaintiffs competitor); Randolph v. Mitchell, 677 So.2d 976 (Fla.Dist.Ct.App.1996) (applying Florida law-agent’s misrepresentation as to insurance coverage). Indeed, this court in AKA found that the concealment of an agreement between the ‘defendant and a third party competitor to the plaintiff was sufficiently extraneous to avoid the application of the economic loss doctrine. See AKA, 137 F.3d at 1087. I also note that some courts have created a blanket exception for fraud or fraudulent inducement claims. See e.g., City of Richmond v. Madison Management Group, Inc., 918 F.2d 438 (4th Cir.1990) (applying Virginia law); Cunningham v. PFL Life Ins. Co., 42 F.Supp.2d 872 (N.D.Iowa 1999) (predicting Iowa law); HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So.2d 1238 (Fla.1996) (applying Florida law).
D. Conclusion
Based on the foregoing analysis, I would reverse: (1) the holding, contrary to Minnesota law, that Marvin qualifies as a merchant in goods of the kind; (2) the improper application of the economic loss doctrine to all fraud claims, contrary to Minnesota law; and (3) the rejection of Marvin’s fraudulent inducement claim, assuming that non-collateral fraud claims are properly barred by the economic loss doctrine.
There can be little harm in sending the fraudulent inducement claim back to the jury, especially since the majority has decided to send the case back on the warranty issue. Unlike the claimants in Huron Tool, Marvin has pled fraud with sufficient *898 specificity under Federal Rule of Civil Procedure 9(b). Marvin’s Amended Complaint gives concrete, specific examples of the circumstances giving rise to its fraud claim. Once all the evidence is presented, the trial court can determine whether Marvin has met its burden of proof on the elements of fraudulent inducement. See Western Contracting Corp. v. Dow Chem. Co., 664 F.2d 1097, 1100-01 (8th Cir.1981) (listing the elements of fraud in the inducement under Minnesota law). Thus, for the reasons stated, the district court’s grant of summary judgment was in error.

. The majority supports its position by stating: "If the definition of dealer were so narrow as to include only purchasers who resold a product unaltered, like a broker or distributor, the economic loss doctrine would be nearly meaningless.” It is not my position that only those who resell unaltered products qualify as dealers. Rather, one must consider the relationship between the product purchased and the product sold. To say that Marvin is a dealer in PILT is the same as saying a fruit vendor is a dealer in the pesticides used to treat its crop. Surely, such a broad understanding of the word "dealer” cannot stand. Although the PILT is part of the finished product, its relationship to the essence of the finished product is sufficiently attenuated to prevent Marvin from qualifying as a dealer.

. The Seventh Circuit, as well as district courts in Michigan, Wisconsin, New York, and Pennsylvania, have all applied the economic loss doctrine to claims restating liability for product defects. A review of the applicable case law makes clear that Marvin's fraud in the inducement claim is of a different ilk.
In Cooper Power Sys., Inc. v. Union Carbide Chems. & Plastics Co., 123 F.3d 675 (7th Cir.1997), the parties entered into a contract for the sale of resin used by the plaintiff in a protective coating system. After the resin failed, plaintiff alleged fraud in the defendant's failure to inform it of problems with color instability and its inability to meet minimum product specifications. The Seventh Circuit found plaintiff's fraud claims "ultimately concerned] the quality of the product sold,” and were thus barred. Cooper Power, 123 F.3d at 682.
In Allmand Assocs., Inc. v. Hercules Inc., 960 F.Supp. 1216 (E.D.Mich.1997), the defendant made a series of representations regarding the abilities of its "METTON®” molding process, including: (1) "METTON® would enable Allmand to make high volume parts under low pressures and increase its customer base;” (2) the product was an "extremely versatile liquid resin that was tougher, lighter, more cost efficient and more flexible in design capability than other engineering compounds;” (3) "it had the potential of molding ribs and bosses with a Class A surface and no sinks or indentations;” (4) the "cycle time for molding ... would be 2.5 to 3.5 minutes, that secondary finishing was not required, that only minimal cleaning would be required, and that the parts produced by METTON® would be easily paintable;” and (5) METTON® would be "compatible with Allmand's zinc ... alloy tools.” Allmand, 960 F.Supp. at 1219. Allmand sued for fraud on these representations, but the court found that the claims were barred because they concerned the quality and characteristics of METTON®. Similarly, in a case out of the Western District of Michigan, Martin v. A.O. Smith Corp., 931 F.Supp. 543 (W.D.Mich.1996), plaintiffs alleged the defendant knowingly misrepresented the "oxygen-limiting” capacity of its silos, and the court rejected the fraud claim as related only to the quality or character of the silos. Likewise, in Theuerkauf v. United Vac *895 cines Div. of Harlan Sprague Dawley, Inc., 821 F.Supp. 1238 (W.D.Mich.1993), the district court rejected the plaintiff’s fraud allegations regarding the defendant’s supposed misrepresentation of the safety of a vaccine injected in the plaintiff's breed stock mink and its failure to warn the plaintiff of harmful side effects.
The court in Raytheon Co. v. McGraw-Edison Co., 979 F.Supp. 858 (E.D.Wis.1997), rejected a plaintiff’s allegations that the defendant committed fraud in its sale of contaminated land. The court found the fraud claims “inseparably embodied” within the terms of the underlying contract. Raytheon, 979 F.Supp. at 873. The representations at issue in Rich Prods. Corp. v. Kemutec, Inc., 66 F.Supp.2d 937, 977 (E.D.Wis.1999), related to a mechanical conveyor's alleged ability to "handle or move mountains of almost anything,” suitability for use in the bakery industry, "excellent experience in handling bakery materials and products,” "good track record,” and suitability for the plaintiff's uses and requirements. The conveyor failed to perform in accordance with expectations, and the plaintiff sued in tort. The court rejected the fraud claims because they "mirror[ed] the warranties of merchantability and fitness for a particular purpose which ... became part of the contract as supplementary terms under the UCC.” Id. Similarly, in Shandwick Holdings, Ltd. v. Carver Boat Corp., 93 F.Supp.2d 1043 (E.D.Wis.2000), the defendant allegedly misrepresented that the yacht the plaintiff sought to purchase was suitable for use on the Mediterranean Sea. The court dismissed the claim as ultimately concerning the yacht's quality.
The district court in Barroso v. Polymer Research Corp., 80 F.Supp.2d 39 (E.D.N.Y.1999), was faced with fraud claims related to the properties of a chemical formula used in colorizing metal objects. ■ The- defendant allegedly stated that the formula could be applied to aluminum of varying thickness, the results were not dependent on the speed of application, the plaintiff did not need to modify its own metal treatment procedures before applying the formula, the formula could withstand high temperatures, and bending and cutting the treated metal would not effect colorization. The plaintiff sued for fraud on these representations after the product failed, and the court rejected the claim because it "stem[med] entirely from an alleged breach of duties assumed under an agreement with defendant.” Barroso, 80 F.Supp.2d at 44. Finally, in Closed Circuit Corp. v. Jerrold Elecs. Corp., 426 F.Supp. 361 (E.D.Pa.1977), plaintiff sued defendant for the fraudulent sale of faulty and defective electronics, alleging reliance on the defendant’s representations as to the design, engineering and manufacture of the equipment. The plaintiff's complaint stated that it had relied on the defendant's representations that the equipment would work for its intended purposes, but it did not. The court found the claims were more appropriately brought under a contract theory.

. Again, a review of the applicable case law is helpful.
In Home Valu, Inc. v. Pep Boys, 213 F.3d 960 (7th Cir.2000), the parties entered into a contract for the sale of real property. The defendant allegedly orally assured the plaintiff that it would purchase the property by the closing date, which was included in an amendment to the agreement. The defendant then backed out of the sale. The plaintiff claimed the representation was fraud in the inducement; however, the Seventh Circuit found the fraud claim barred by the economic loss doctrine. In GBJ Corp. v. Eastern Ohio Paving Co., 139 F.3d 1080 (6th Cir.1998), the Sixth Circuit rejected a fraud claim based on the defendant’s alleged promise to enter into a multi-part deal that was the basis of the breach of contract claim. The court explained: "The plaintiffs’ complaint names the terms of the contract as the relevant promises. As such, the tort claim is indistinguishable from the contract claim, and cannot exist alongside it.” GBJ, 139 F.3d at 1088.
The District Court for the Southern District of New York was faced with a fraudulent inducement claim based on nonperformance in Scholastic Inc. v. Harris, 80 F.Supp.2d 139 (S.D.N.Y.1999). Plaintiffs alleged that the defendants fraudulently induced them to enter a joint venture by misrepresenting the number of projects the defendants would develop and the amount of time and resources they would dedicate to the venture. The court dismissed the fraud claims, explaining that the claims were identical to the contractual duties which the defendants allegedly breached. In S.O. Textiles Co. v. A & E Prods. Group, 18 F.Supp.2d 232 (E.D.N.Y.1998), the plaintiff contracted with the defendant for the purchase of hangers in which the defendant pledged to give the plaintiff a seven percent rebate on its purchases. The agreement fell through, and the plaintiff alleged the defendant never intended to give the rebate, but rather used it to induce the plaintiff to contract. The court found the allegations not extraneous to the terms of the contract. The parties in Hudson Optical Corp. v. Cabot Safety Corp., 971 F.Supp. 108 (E.D.N.Y.1997), agreed to the sale and resale of safety glasses. The plaintiff alleged the defendant fraudulently misrepresented its intention to sell 72,700 of the plaintiff’s frames, as well as its intention to promote the plaintiff’s frames equally with its own. The claims were held to be insufficiently extraneous from the contract to withstand the economic loss rule.
The District Court for the District of Minnesota was faced with a nonperformance claim restated as a fraud claim in In re Grain Land Coop Cases, 978 F.Supp. 1267 (D.Minn.1997). Grain producers and an agricultural coop association entered into contracts fixing the price for the deferred delivery of grain. A subsequent rise in grain prices led the coop to announce a series of policy changes, including the termination of the contracts. The producers sued on a theory of fraud, and the court found the tort claims proscribed by the economic loss doctrine. In Parkhill v. Minnesota Mutual Life Ins. Co., 995 F.Supp. 983 (D.Minn.1998), the plaintiffs alleged the defendant fraudulently induced them to purchase "vanishing premium” life insurance policies by misrepresenting the nature of the product. Specifically, the defendant allegedly understated the number of out-of-pocket premium payments that would be required to maintain the policy. When the defendant failed to discontinue its premium assessments as required under the contract, the plaintiffs sued for fraud. The court rejected their claim, stating that "the representations made by defendant are at the heart of the dispute over the parties' agreement.” Parkhill, 995 F.Supp. at 994.
In Ice Bowl L.L.C. v. Weigel Broadcasting Co., 14 F.Supp.2d 1080 (E.D.Wis.1998), the plaintiff sued on a misrepresentation theory after the defendant failed to pay monetary sums designated under the contract and failed to provide the plaintiff with television air lime as the parties previously agreed. The court explained: "The tort theories advanced in this case by Ice Bowl ... add no facts to the contract claims but merely invoke new adjec *897 tives. There is but a single dispute in this case, and it is one sounding in contract." Ice Bowl, 14 F.Supp.2d at 1082.
Likewise, the Florida Court of Appeals rejected a fraud claim based on defendants' failure to fulfill three contractually-related promises in Hotels of Key Largo, Inc. v. RHI Hotels, Inc., 694 So.2d 74 (Fla.Dist.Ct.App.1997). The defendants allegedly misrepresented: (1) plaintiffs would become part of the Radisson Hotels family and would participate in a worldwide reservation system; (2) plaintiffs would be the sole beneficiaries of the reservation system in the Florida Keys; and (3) more than forty percent of plaintiffs’ room reservations would come from the reservation system and travel agents. When the defendants failed to come through on their promises, the plaintiffs alleged fraudulent inducement. The court rejected the claim, finding it not independent of the contract.

. I note that there are other cases out of ’ Minnesota which are sometimes cited by courts applying the economic loss doctrine. See Upsher-Smith Lab., Inc. v. Mylan Lab., Inc., 944 F.Supp. 1411 (D.Minn.1996); Nelson Distrib., Inc. v. Stewart-Warner Indus. Balancers, 808 F.Supp. 684 (D.Minn.1992); ETM Graphics, Inc. v. City of St. Paul, No. C2-91-2103, 1992 WL 61394 (Minn.Ct.App. Mar.31, 1992). This court in AKA cited these cases in support of its holding. A review of these three opinions, however, leave the reader without a clear understanding of the factual basis of the fraud claims.